# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

AMERICAN BEVERAGE
ASSOCIATION; CONSUMER BRANDS
ASSOCIATION; NATIONAL
CONFECTIONER'S ASSOCIATION;
FMI, THE FOOD INDUSTRY
ASSOCIATION,

                    Plaintiffs,

    v.

KEN PAXTON, in his official capacity as
ATTORNEY GENERAL OF THE
STATE OF TEXAS,

                    Defendant.

Civil Case No. 25-cv-00566-ADA-DTG

## PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................. i

TABLE OF AUTHORITIES ..................................................................................... i

INTRODUCTION ...................................................................................................... 1

BACKGROUND ......................................................................................................... 3

    I.    Federal law comprehensively regulates food and beverage
        ingredients. ................................................................................................... 3

    II.    Section 9 compels government-scripted messages that are misleading
        and reflect the purported policy judgments of foreign governments. ... 5

LEGAL STANDARD ................................................................................................. 7

ARGUMENT .............................................................................................................. 8

    I.    Plaintiffs are substantially likely to succeed on the merits. ................ 8

        A.    Plaintiffs have associational standing to challenge Section 9. ... 8

        B.    Plaintiffs are substantially likely to succeed on the merits of
            their claim that Section 9 violates the First Amendment. ......... 9

        C.    Plaintiffs are also substantially likely to succeed on the merits
            of their claim that Section 9's warning requirement is void for
            vagueness. .................................................................................... 15

        D.    Plaintiffs are also substantially likely to succeed on the merits
            of their claim that Section 9 is preempted. ............................... 17

    II.    Plaintiffs' members will suffer irreparable harm without injunctive
        relief. .......................................................................................................... 18

    III.    The remaining factors weigh in favor of a preliminary injunction. .... 20

CONCLUSION .......................................................................................................... 20

# TABLE OF AUTHORITIES

Page(s)

## Cases

*44 Liquormart, Inc. v. Rhode Island*,
  517 U.S. 484 (1996) ................................................................................ 12

*Am. Beverage Ass'n v. City and Cnty. of San Francisco*,
  916 F.3d 749 (9th Cir. 2019) ................................................................... 15

*Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*,
  627 F.3d 547 (5th Cir. 2010) ..................................................................... 9

*Bolger v. Youngs Drug Prods. Corp.*,
  463 U.S. 60 (1983) .................................................................................. 12

*Book People, Inc. v. Wong*,
  91 F.4th 318 (5th Cir. 2024) ......................................................... 8, 15, 20

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*,
  447 U.S. 557 (1980) ........................................................................... 12, 13

*Cincinnati v. Discovery Network, Inc.*,
  507 U.S. 410 (1993) ................................................................................ 13

*Crosby v. Nat'l Foreign Trade Council*,
  530 U.S. 363 (2000) ................................................................................ 18

*Dep't of Texas, Veterans of Foreign Wars of U.S. v. Texas Lottery Comm'n*,
  760 F.3d 427 (5th Cir. 2014) ................................................................... 13

*Elrod v. Burns*,
  427 U.S. 347 (1976) ........................................................................ 7, 8, 18

*Free Speech Coal., Inc. v. Paxton*,
  95 F.4th 263 (5th Cir. 2024) .............................................................*passim*

*Fund Tex. Choice v. Paxton*,
  658 F. Supp. 3d 377 (W.D. Tex. 2023) ................................................... 20

*Greater New Orleans Broad. Ass'n, Inc. v. United States*,
  527 U.S. 173 (1999) ................................................................................ 13

*Hines v. Davidowitz*,
  312 U.S. 52 (1941) .................................................................................. 18

*Int'l Dairy Foods Ass'n v. Amestoy*,
  92 F.3d 67 (2d Cir. 1996) ........................................................................ 10

*Janvey v. Alguire*,
  647 F.3d 585 (5th Cir. 2011) ..................................................................... 7

*Louisiana v. Biden*,
  55 F.4th 1017 (5th Cir. 2022) .................................................................. 19

**TABLE OF AUTHORITIES**
(cont'd)

*McDonald v. Longley*,
 4 F.4th 229 (5th Cir. 2021)......................................................................... 7

*Mut. Pharm. Co. v. Bartlett*,
 570 U.S. 472 (2013) .................................................................................. 17

*Nat'l Ass'n of Mfrs. v. SEC*,
 800 F.3d 518 (D.C. Cir. 2015) .................................................................. 20

*Nat'l Ass'n of Wheat Growers v. Bonta*,
 85 F.4th 1263 (9th Cir. 2023)................................................... 12, 13, 15

*Nat'l Fed'n of the Blind of Tex., Inc. v. Abbott*,
 647 F.3d 202 (5th Cir. 2011) .................................................................... 11

*Nat'l Inst. of Fam. & Life Advocates v. Becerra*,
 585 U.S. 755 (2018) ............................................................................... 9, 10

*Nat'l Religious Broadcasters v. Fed. Commc'ns Comm'n*,
 138 F.4th 282 (5th Cir. 2025)...................................................................... 8

*NetChoice, L.L.C. v. Fitch*,
 134 F.4th 799 (5th Cir. 2025)...................................................................... 8

*Nken v. Holder*,
 556 U.S. 418 (2009) .................................................................................... 7

*Opulent Life Church v. City of Holly Springs*,
 697 F.3d 279 (5th Cir. 2012) .............................................................. 19, 20

*PLIVA, Inc. v. Mensing*,
 564 U.S. 604 (2011) .................................................................................. 17

*Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*,
 487 U.S. 781 (1988) .................................................................................. 11

*Rubin v. Coors Brewing Co.*,
 514 U.S. 476 (1995) .................................................................................. 12

*Smith v. Goguen*,
 415 U.S. 566 (1974) .................................................................................. 16

*Students Engaged in Advancing Tex. v. Paxton*,
 765 F. Supp. 3d 575 (W.D. Tex. 2025) ..................................................... 16

*Texans for Free Enter. v. Tex. Ethics Comm'n*,
 732 F.3d 535 (5th Cir. 2013) ...................................................................... 7

*Turek v. Gen. Mills, Inc.*,
 662 F.3d 423 (7th Cir. 2011) .................................................................... 18

*Turtle Island Foods, S.P.C. v. Strain*,
 65 F.4th 211 (5th Cir. 2023)...................................................................... 17

*Va. Pharm. Bd. v. Va. Citizens Consumer Council*,
 425 U.S. 748 (1976) .................................................................................... 9

TABLE OF AUTHORITIES
(cont'd)

*Wages & White Lion Invs., LLC v. FDA,*
   16 F.4th 1130 (5th Cir. 2021)..................................................................20

*Wenner v. Tex. Lottery Comm'n,*
   123 F.3d 321 (5th Cir. 1997) ..................................................................20

*In re: Whole Foods Mkt., Inc.,*
   163 F. Supp. 3d 385 (W.D. Tex. 2016) .............................................4, 18

*Winters v. New York,*
   333 U.S. 507 (1948) ...............................................................................15

*Witty v. Delta Air Lines, Inc.,*
   366 F.3d 380 (5th Cir. 2004) ..................................................................17

*Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio,*
   471 U.S. 626 (1985) ...............................................................................14

**Statutes and Legislative Materials**

21 U.S.C. § 301.............................................................................................3

21 U.S.C. § 343.....................................................................................3, 4, 17

21 U.S.C. § 393.............................................................................................3

H.R. Rep. No. 101-538 (1990)..................................................................3, 18

Nutrition Labeling and Education Act, Pub. L. No. 101-535, 104 Stat.
   2353 ..........................................................................................................3

Tex. Health & Safety Code § 431.0815 ...........................................*passim*

Tex. Health & Safety Code §431.0815(b)(1)..............................................13

Tex. Health & Safety Code § 431.0817 ...............................................6, 16

**Regulations**

21 C.F.R. § 73.575.........................................................................................4

21 C.F.R. § 74.101.........................................................................................4

21 C.F.R. § 74.102.........................................................................................4

21 C.F.R. § 74.203.........................................................................................4

21 C.F.R. § 74.302.........................................................................................4

21 C.F.R. § 74.340.........................................................................................4

21 C.F.R. § 74.705.........................................................................................4

21 C.F.R. § 74.706.........................................................................................4

21 C.F.R. § 136.110.......................................................................................4

21 C.F.R. § 137.105.......................................................................................4

21 C.F.R. § 172.110.......................................................................................4

21 C.F.R. § 172.115.......................................................................................4

21 C.F.R. § 172.235.......................................................................................4

**TABLE OF AUTHORITIES**
(cont'd)

21 C.F.R. § 172.515 ...................................................................................... 4

21 C.F.R. § 172.730 ...................................................................................... 4

21 C.F.R. § 172.806 ...................................................................................... 4

21 C.F.R. § 172.806 ...................................................................................... 4

21 C.F.R. § 172.810 ...................................................................................... 4

21 C.F.R. § 172.822 ...................................................................................... 4

21 C.F.R. § 172.826 ...................................................................................... 4

21 C.F.R. § 172.828 ...................................................................................... 4

21 C.F.R. § 172.850 ...................................................................................... 4

21 C.F.R. § 172.867 ...................................................................................... 4

21 C.F.R. § 182.1129 ..................................................................................... 4

21 C.F.R. § 182.1131 ..................................................................................... 4

21 C.F.R. § 182.3109 ..................................................................................... 4

21 C.F.R. § 184.1101 ..................................................................................... 4

21 C.F.R. § 184.1259 ..................................................................................... 4

21 C.F.R. § 184.1278 ..................................................................................... 4

21 C.F.R. § 184.1316 ..................................................................................... 4

21 C.F.R. § 184.1635 ..................................................................................... 4

21 C.F.R. § 184.1763 ..................................................................................... 4

40 C.F.R. § 180.491 ...................................................................................... 4

50 Tex. Reg. 6301 ......................................................................................... 5

50 Tex. Reg. 6304 ....................................................................................... 16

## INTRODUCTION

The safety of the foods and beverages that grace America's tables is too important to outsource to foreign governments. But that's exactly what the law at issue in this case—Section 9 of Texas Senate Bill 25—does. All agree that improving safety and transparency are vitally important goals. Section 9, however, attempts to accomplish those goals in ways the U.S. Constitution doesn't permit. Plaintiffs are entitled to a preliminary injunction against the irreparable harms Section 9 would inflict while the Court resolves the merits of their constitutional challenges.

Section 9 compels food and beverage manufacturers to include conspicuous warning labels on products that contain any of 44 listed ingredients and post those warnings online. That means plaintiffs' members—who make thousands of food and beverage items enjoyed by millions of Texans each year—must falsely tell Texas consumers that products containing any of these ingredients are "not recommended for human consumption" in the European Union, the United Kingdom, Canada, or Australia. *See* Tex. Health & Safety Code § 431.0815(b)(1). That warning isn't accurate, and it isn't triggered by any determination made by any Texas- or U.S.-based authority. It's rooted in purported policy judgments made by foreign jurisdictions.

While Section 9's warning requirement violates multiple constitutional provisions, this Court need determine that the preliminary-injunction standard is satisfied as to just one of them for plaintiffs to be entitled to relief—and it's particularly evident that plaintiffs are substantially likely to prevail in their First

Amendment challenge. Section 9 can't satisfy strict scrutiny because it isn't narrowly tailored to achieve a compelling government interest. At best, Section 9's warnings will sow confusion about the safety of certain ingredients. At worst, Section 9's warnings will convey demonstrably false statements about whether foreign governments allow certain ingredients. But the government has no interest in compelling false and misleading speech—and any legitimate interest is particularly weak here, where federal law permits all ingredients used in plaintiffs' members products. Section 9 isn't narrowly tailored, because the government could simply speak for itself instead of compelling others to speak government-scripted messages.

Plaintiffs' First Amendment challenge is substantially likely to succeed even if intermediate scrutiny applies, because the government lacks a substantial interest in compelling Section 9's warnings, those warnings don't advance any asserted interest except in an impermissibly roundabout way, and the government could speak for itself rather than compelling others to speak. Where, as here, a plaintiff is substantially likely to succeed on a First Amendment claim, the other preliminary-injunction factors are easily satisfied—i.e., the loss of First Amendment freedoms unquestionably constitutes irreparable injury, and injunctions protecting First Amendment freedoms always serve the public interest. So Section 9's First Amendment failings are more than enough to justify preliminary relief.

But there's more. Section 9's warning requirement is unconstitutionally vague because it contains a "federal preemption" provision with undefined exceptions that deprive plaintiffs and their members of fair notice about when Section 9 applies and

when it doesn't.  It's conflict preempted by the Supremacy Clause because it conflicts with federal law prohibiting food-and-beverage labels from containing false or misleading statements.  And it's obstacle preempted by the Supremacy Clause because it frustrates Congress's purpose in establishing uniform labeling for foods and beverages.

The remaining factors also weigh in favor of a preliminary injunction on these alternate, independent grounds—plaintiffs are suffering irreparable harm in the form of unrecoverable sums their members are already spending to comply with Section 9, and the public interest is always served by following the Constitution.  The Court should preliminarily enjoin Section 9 to preserve the status quo while it resolves plaintiffs' weighty constitutional challenges.

## BACKGROUND

## I.    Federal law comprehensively regulates food and beverage ingredients.

To ensure the safety and appropriate labeling of food, Congress passed the Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq*.  The FDCA authorizes the FDA to "protect the public health by ensuring that . . . foods are safe, wholesome, sanitary, and properly labeled."  21 U.S.C. § 393(b)(2)(A).  The FDCA also provides that "[a] food shall be deemed to be misbranded" if "its labeling is false or misleading in any particular."  21 U.S.C. § 343(a)(1).

Congress later passed the Nutrition Labeling and Education Act, Pub. L. No. 101-535, 104 Stat. 2353, which amended the FDCA to "establish uniform national standards for the nutritional claims and the required nutrient information displayed

on food labels." H.R. Rep. No. 101-538 (1990), reprinted in 1990 U.S.C.C.A.N. 3336, 3342. "Part of the NLEA's purpose was to create uniform national standards regarding the labeling of food." *In re: Whole Foods Mkt., Inc.*, 163 F. Supp. 3d 385, 391 (W.D. Tex. 2016).

Under federal law, the FDA may permit ingredients in foods by regulation, whether through a premarket approval process or because ingredients are generally recognized as safe. *See* 21 C.F.R. Parts 73–74, 81–82, 101, 170–73, 180, 182, and 184–86 (premarket approval); 21 C.F.R. Part 190.6 (generally recognized as safe). Other ingredients may be generally recognized as safe by food and beverage manufacturers themselves. 21 C.F.R. Part 170.30. Here, the FDA has expressly permitted nearly all of the ingredients covered by Section 9 for use in food.[1]

---

[1] *See*, *e.g.*, 21 C.F.R. §172.828 (acetylated monoglycerides); *id.* at 172.515 (anisole); *id.* at § 172.806 (azodicarbonamide); *id.* at 172.110 (BHA); *id.* at 172.115 (BHT); *id.* at 137.105 (bleached flour contains wheat and and optional bleaching ingredients like acetone peroxides which FDA determined "may be safely used in flour" under to 21 C.F.R. § 172.806); *id.* at 74.101 (Blue No. 1); *id.* at 74.102 (Blue No. 2); *id.* at 172.730 (potassium bromate); *id.* at 136.110 (calcium bromate); *id.* at 73.75 (canthaxanthin); *id.* at 74.302 (Citrus Red No. 2); *id*. at 184.1278 (diacetyl); *id.* at 184.1101 (DATEM); *id.* at 172.810 (DSS); *id.* at 184.1316 (ficin); *id.* at 74.203 (Green No. 3); *id.* at 184.1259 (interesterified palm oil); *id.* at 172.850 (lactylated fatty acid esters of glycerol and propylene glycol); *id.* at 184.1763 (lye); *id.* at 172.235 (morpholine); *id.* at 172.867 (olestra); *id.* at 182.1129 (aluminum potassium sulfate); *id.* at 172.730 (potassium bromate); *id.* at 184.1635 (potassium iodate); *id.* at 172.515 (propylparaben); *id.* at 74.340 (Red No. 40); *id.* at 182.1131 (aluminum sodium sulfate); *id.* at 172.822 (sodium lauryl sulfate); *id.* at 172.826 (sodium stearyl fumarate); *id.* at 182.3109 (thiodipropionic acid); *id.* at 73.575 (titanium dioxide); *id.* at 74.705 (Yellow No. 5); *id.* at 74.706 (Yellow No. 6); 40 C.F.R. § 180.491 (fumigant propylene oxide).

## II.    Section 9 compels government-scripted messages that are misleading and reflect the purported policy judgments of foreign governments.

Section 9's warning requirement compels manufacturers to include a "warning" label on products that contain any of 44 listed ingredients.[2] Tex. Health & Safety Code § 431.0815(a).  That list includes ingredients that federal regulators have long permitted as safe for use in the United States.  Ex. A, Decl. of Amy Brink, ¶ 4; Ex. B, Decl. of Rhonda Bentz, ¶ 4; Ex. C, Decl. of Elise Fennig, ¶ 9; Ex. D, Decl. of Doug Baker, ¶ 6.

Section 9 scripts what food manufacturers must say and how the compelled warnings must appear.  Impacted products must include a statement that reads: "WARNING: This product contains an ingredient that is not recommended for human consumption by the appropriate authority in Australia, Canada, the European Union, or the United Kingdom."  Tex. Health & Safety Code § 431.0815(a).  This warning must be conspicuously placed.  *Id.* § 431.0815(b).  In many instances, it must appear not only on the products themselves, but also online.  *Id.* § 431.0815(c).

Section 9's warning necessarily suggests to consumers that the covered ingredients are unsafe, even though virtually all are allowed by federal law—either because they've been specifically permitted by the FDA or are generally recognized as safe.  Ex. A, ¶ 4; Ex. B, ¶ 4; Ex. C, ¶ 9; Ex. D, ¶ 6.  Section 9 also misleadingly

---

[2]  The Texas Department of Health and Human Services has proposed a rule interpreting Section 9.  *See* 50 Tex. Reg. 6301–05.  That rule is subject to comment and may be changed before it becomes final.  Even if promulgated, the proposed rule doesn't and couldn't remedy Section 9's unconstitutionality.

states that foreign jurisdictions have designated the covered ingredients as "not recommended for human consumption" when they have not.  Ex. A, ¶ 8; Ex. B, ¶ 8; Ex. C, ¶ 9; Ex. D, ¶ 10.  And Section 9's warning requirement gives consumers no way to tell which ingredient triggered the warning or on what basis.  Ex. A, ¶ 11; Ex. B, ¶ 9; Ex. D, ¶ 11.

For many of the ingredients covered by Section 9, the required warning is false because Canada, the United Kingdom, European Union, and Australia all permit their use in foods and beverages.  Ex. A, ¶ 9; Ex. B, ¶ 6; Ex. C, ¶ 9.  For other ingredients permitted in the United States, Section 9 misleadingly suggests that they're prohibited in *all* of Canada, the European Union, United Kingdom, and Australia when they're actually permitted in some of those jurisdictions.  Ex. A, ¶ 10; Ex. B, ¶ 6.

The warning requirement is also riddled with exemptions—for restaurant and retail-prepared food, USDA-regulated products, dietary supplements, and agricultural chemicals.  *Id.* § 431.0815(d)(1)–(7).

Section 9 includes a "Federal Preemption" provision.  Tex. Health & Safety Code § 431.0817.  It provides that Section 9 "has no effect" "[o]n and after September 1, 2025, and the effective date of a federal law or regulation issued by the [FDA] or the United States Department of Agriculture" if the law or regulation "prohibits the use of the ingredient," "imposes conditions on the use of the ingredient," "determines an ingredient or class of ingredients is safe for human consumption," or "requires a labeling statement relating to ultra processed or processed foods."  *Id.*  None of these

indeterminate phrases—like "imposes conditions" or "determines an ingredient is safe for human consumption"—is defined.

The Attorney General is tasked with enforcing Section 9 and has broad authority to do so. *Id.* § 431.0816(b)(2). Section 9 applies starting on January 1, 2027, and plaintiffs' members have already begun the complex and costly alterations to their business practices to comply with the warning requirement. Ex. B, ¶ 18; Ex. D, ¶ 26.

## LEGAL STANDARD

A preliminary injunction is appropriate when a plaintiff demonstrates: "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011).

In the First Amendment context, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," and "injunctions protecting First Amendment freedoms are always in the public interest." *McDonald v. Longley*, 4 F.4th 229, 255 (5th Cir. 2021) (quoting first *Elrod v. Burns*, 427 U.S. 347, 373 (1976), and then *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013)). When injunctive relief is sought against the government, the balance of the equities and the public interest "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## ARGUMENT

## I.    Plaintiffs are substantially likely to succeed on the merits.

### A.    Plaintiffs have associational standing to challenge Section 9.

Plaintiffs satisfy each associational-standing element: (1) their members would have standing in their own right; (2) the interests they seek to protect are germane to their organizational purposes; and (3) the claims asserted and the relief requested don't require the participation of individual members in the suit. *Nat'l Religious Broadcasters v. Fed. Commc'ns Comm'n*, 138 F.4th 282, 290 (5th Cir. 2025).

1. The associations' members have standing in their own right because they're directly and adversely affected by Section 9. *NetChoice, L.L.C. v. Fitch*, 134 F.4th 799, 804 (5th Cir. 2025) (explaining "statute" that "would increase regulatory requirements of" association's "members, causing financial harm" sufficed). Some members of each association use ingredients listed in Section 9. Ex. A, ¶¶ 4-5; Ex. B, ¶¶ 4-5; Ex. C, ¶¶ 5-6; Ex. D, ¶¶ 22-23. So those members will suffer irreparable harm not only by being compelled to convey government-scripted messages, *see Elrod*, 427 U.S. at 373, but also by being forced to incur irrecoverable economic costs and changing their business practices to comply with Section 9. Ex. A, ¶¶ 17-19; Ex. B, ¶¶ 14-15; Ex. D, ¶ 8. This "[e]conomic harm—like damage to one's business interest—is a quintessential Article III injury." *Book People, Inc. v. Wong*, 91 F.4th 318 331 (5th Cir. 2024).

2. The interests that plaintiffs seek to protect are germane to their purposes. Ex. A, ¶ 27; Ex. B, ¶ 23; Ex. C, ¶ 4; Ex. D, ¶ 29. The "germaneness requirement is

undemanding and requires mere pertinence between the litigation at issue and the organization's purpose." *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 550 n.2 (5th Cir. 2010). That's easily satisfied here, where plaintiffs are committed to protecting the interests of their members, as well as the broader business community, and regularly advocate for uniform and accurate labels for food and beverage products.

3. Neither the claims asserted nor the relief requested require an individual member to participate in the suit because Senate Bill 25 applies equally to plaintiffs' members. *See id.* at 550–51 (explaining this "solely prudential" analysis focuses on "matters of administrative convenience and efficiency").

**B.    Plaintiffs are substantially likely to succeed on the merits of their claim that Section 9 violates the First Amendment.**

The First Amendment protects commercial speech—including the right not to be compelled to speak government-scripted messages. *Va. Pharm. Bd. v. Va. Citizens Consumer Council*, 425 U.S. 748, 762 (1976); *Free Speech Coal., Inc. v. Paxton*, 95 F.4th 263, 279 (5th Cir. 2024). Because Section 9 compels food and beverage manufacturers to convey a government-scripted message on food labels and online, it's a "content-based regulation of speech" that "compel[s] individuals to speak a particular message," "alte[rs] the content of [their] speech," and is subject to strict scrutiny. *Nat'l Inst. of Fam. & Life Advocates v. Becerra*, 585 U.S. 755, 766 (2018) (*NIFLA*). Section 9 can't survive either strict or intermediate scrutiny, so plaintiffs

are substantially likely to succeed on their First Amendment challenge.[3]

### 1.    The warning requirement doesn't satisfy strict scrutiny.

As a content-based speech regulation that compels commercial speech, Section 9 is subject to strict scrutiny.  The Supreme Court has explained that content-based speech regulations are "presumptively unconstitutional and may be justified only if *the government* proves that they are narrowly tailored to serve compelling state interests"—a level of scrutiny Section 9 can't possibly survive.  *NIFLA*, 585 U.S. at 766 (emphasis added); *see Free Speech Coal.*, 95 F.4th at 283.

For starters, the government has no interest—much less a compelling one—in compelling food manufacturers to convey false or misleading information.  *See Int'l Dairy Foods Ass'n v. Amestoy*, 92 F.3d 67, 73–74 (2d Cir. 1996).  Section 9 requires plaintiffs' members to label their products with warnings that listed ingredients are "not recommended for human consumption" by four foreign jurisdictions.  But ***none*** of those jurisdictions categorize ingredients that way.  Ex. A, ¶ 8; Ex. B, ¶ 8; Ex. C, ¶ 9; Ex. D, ¶ 10.

In fact, all four jurisdictions affirmatively ***allow*** many of Section 9's listed ingredients, making the warning requirement outright false in a substantial number of instances.  Ex. A, ¶ 9; Ex. B, ¶ 6; Ex. C, ¶ 9.  In many other instances, one or more of the foreign jurisdictions allow the listed ingredients.  Ex. A, ¶ 10; Ex. B, ¶ 6.  Even

---

[3]  As the Fifth Circuit has explained, it "is unsettled precisely which standard of scrutiny applies to compelled commercial speech." *Free Speech Coalition*, 95 F.4th at 283.  "*NIFLA* suggests that compelled speech must survive, *at minimum*, intermediate scrutiny." *Id.* (citing *NIFLA*, 585 U.S. at 773) (emphasis in original).

where an ingredient isn't permitted in any of the foreign jurisdictions, that doesn't mean they have determined an ingredient is unsafe. It could simply be that no manufacturer has requested permission to use a given ingredient.

Yet Section 9 indiscriminately lumps the foreign jurisdictions together—threatening to mislead consumers into believing that some ingredient in a product (there's no way to know which one) isn't recommended for human consumption in any of those jurisdictions. On top of all that, Section 9's warning requirement covers the same ingredients in plaintiffs' products that FDA permits. *Supra*, at n.1. Given all this, the government can't satisfy the compelling-interest requirement for a multitude of reasons.

Even if it could, Section 9 would still fail strict scrutiny because it isn't narrowly tailored, i.e., it's not the least restrictive means of accomplishing any claimed interest. That requirement isn't satisfied where, as here, the government could simply speak for itself "without burdening" other speakers by imposing a "prophylactic" rule of compelled speech. *Nat'l Fed'n of the Blind of Tex., Inc. v. Abbott*, 647 F.3d 202, 213–14 (5th Cir. 2011) (quoting *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 800 (1988)).

There's "nothing stopping" Texas from conveying whatever message it wants about the ingredients covered by Section 9. *Id.* at 214. The absence of "any showing" the government tried a "public information campaign or that such a campaign would be ineffective" means that there are "obvious less-burdensome alternatives" available to Section 9's warnings. *Free Speech Coal.*, 95 F.4th at 284. The government could

11

instead "reasonably post information . . . on its own website or conduct an advertising campaign." *Nat'l Ass'n of Wheat Growers v. Bonta*, 85 F.4th 1263, 1283 (9th Cir. 2023). That alone is fatal to Section 9's warning requirement.

> ## 2. The warning requirement can't withstand intermediate scrutiny.

Section 9 is subject "*at minimum*" to intermediate scrutiny. *Free Speech Coal.*, 95 F.4th at 283. It can't survive that level of scrutiny either, because the government cannot carry its heavy burden of showing (1) a "substantial" interest in regulating the speech; (2) that "the regulation directly advances the government interest asserted"; and (3) that the regulation is "not more extensive than necessary to serve that interest." *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 68–69 (1983).

*First*, the government has no interest, substantial or otherwise, in compelling speech that's false or misleading. S*upra*, at 5–6, 10–11.

*Second*, the government must show that the warning requirement "will in fact alleviate the[] [purported harms] to a material degree." *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 487 (1995); *Free Speech Coal.*, 95 F.4th at 283–84. "[T]he regulation may not be sustained if it provides only ineffective or remote support for the government's purpose." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 564 (1980). Instead, the government must establish Section 9 will "significantly" alleviate the purported harms. *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 505–06 (1996). The government can't make that showing.

At best, the warning requirement serves any purported government interest in an impermissibly roundabout way. Even on its own terms, Section 9 pursues any

goal only indirectly—compelling manufacturers to speak, assuming consumers notice, hoping consumers are influenced, expecting reductions in consumption, and presuming that this will further the government's aims. That ripple-effect theory provides only "remote" support at best for the government's purpose. *Cent. Hudson*, 447 U.S. at 564.

What's more, as the Fifth Circuit explained in *Free Speech Coalition*, "[c]ompelling sellers to warn consumers of a potential 'risk' never confirmed by any regulatory body—or of a hazard not 'known' to more than a small subset of the scientific community—does not directly advance the government's interest." 95 F.4th at 284 (quoting *Nat'l Ass'n of Wheat Growers*, 85 F.4th at 1283). That's true here, where none of the foreign jurisdictions even categorize ingredients as "not recommended for human consumption" and the FDA permits virtually all Section 9's ingredients. Tex. Health & Safety Code § 431.0815(b)(1).

*Third*, there are less coercive alternatives the government could use to advance any interests it asserts. Instead of forcing others to convey government-scripted messages, the government could convey those messages itself. Failure to consider less burdensome alternatives is independently fatal under intermediate scrutiny. *Free Speech Coal.*, 95 F.4th at 284–85; *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 417 n.13 (1993).

Further, Section 9 is "so pierced by exemptions and inconsistencies" that it can't "hope to exonerate" any purpose. *Greater New Orleans Broad. Ass'n, Inc. v. United States*, 527 U.S. 173, 190 (1999); *Dep't of Texas, Veterans of Foreign Wars of*

13

*U.S. v. Texas Lottery Comm'n*, 760 F.3d 427, 440 (5th Cir. 2014) (en banc). Section 9 excludes restaurants, retail-prepared foods, dietary supplements, USDA-regulated products, and agricultural chemicals. *See* Tex. Health & Safety Code § 431.0815(d)(2)–(4), (7). It also excludes *current* labels as long as they aren't changed. These exemptions further underscore that the government has no substantial interest in compelling businesses to convey Section 9's warning and that less speech-restrictive means exist to further any interest the government has.

### 3. *Zauderer* doesn't apply or change the result.

Under *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626 (1985), courts apply relaxed scrutiny to requirements that compel businesses to convey "purely factual and uncontroversial information." *Free Speech Coal.*, 95 F.4th at 281. The government bears the burden of showing that Section 9's warning is *purely* factual and uncontroversial, *id.*, and can't carry that burden here because the "information" required by Section 9 is neither. Ex. A, ¶¶ 8–12; Ex. B, ¶¶ 8–10; Ex. C, ¶ 9; Ex. D, ¶ 10.

None of the foreign jurisdictions listed in Section 9 categorize ingredients as "not recommended for human consumption." Ex. A, ¶¶ 8–12; Ex. B, ¶¶ 8–10; Ex. C, ¶ 9; Ex. D, ¶ 10. And whether the ingredients listed in Section 9 pose any risk for human consumption is at minimum subject to controversy. In fact, nearly all are permitted by federal law. *Supra*, at n.1. And the few that aren't permitted aren't in use—rendering Section 9's warning requirement inoperative as to those ingredients.

In sum, there's ongoing, vigorous national debate about food safety and food

14

labeling.  Ex. A, ¶ 29; Ex. B, ¶ 25; Ex. D, ¶ 31.  And Section 9's warning requirement is both inaccurate and misleading—indeed, it's outright false in a substantial number of instances.  *Supra*, at 5–6, 10–11.  So *Zauderer* doesn't apply.  *Free Speech Coal.*, 95 F.4th at 282 (declining to apply *Zauderer* where scientific controversy existed); *Am. Beverage Ass'n v. City and Cnty. of San Francisco*, 916 F.3d 749, 757 (9th Cir. 2019) (en banc) (same); *Nat'l Ass'n of Wheat Growers*, 85 F.4th at 1278–80 (same).

Applying *Zauderer* wouldn't change the result because Section 9's disclosures are "unduly burdensome."  *Book People*, 91 F.4th at 339, n.124; *infra*, at 19–20.

\* \* \*

Plaintiffs are substantially likely to succeed on the merits of their claim that Section 9 violates the First Amendment.  The government can't show it's narrowly tailored to serve a compelling government interest under strict scrutiny.  And the government can't satisfy intermediate scrutiny because (1) the government lacks a substantial interest in compelling plaintiffs' members to convey information that's false and misleading, (2) Section 9 only indirectly advances any government interest, and (3) there are less coercive ways for the government to advance any interest—like speaking for itself.  The Court need go no further to determine that plaintiffs are entitled to the preliminary injunction they seek.

## C.    Plaintiffs are also substantially likely to succeed on the merits of their claim that Section 9's warning requirement is void for vagueness.

Due process forbids laws so vague that they fail to give people of ordinary intelligence fair notice of what conduct is prohibited.  *Winters v. New York*, 333 U.S.

507, 515–16 (1948).  That principle applies with special force where, as here, the law regulates or compels speech.  *Smith v. Goguen*, 415 U.S. 566, 573 (1974).

Section 9's warning requirement is unconstitutionally vague.  Its "preemption" provision declares that Section 9 has "no effect" if a federal law or FDA regulation "imposes conditions on the use of the ingredient," "determines an ingredient . . . is safe for human consumption," or "requires a labeling statement relating to ultra-processed or processed foods."  Tex. Health & Safety Code § 431.0817.  Section 9 doesn't define those crucial phrases.[4]  It doesn't offer any guidance explaining what it means for the FDA to "impose[] conditions on the use of [an] ingredient."  Tex. Health & Safety Code § 431.0817(1)(B).  It doesn't specify what constitutes a federal "determin[ation]" that an ingredient is "safe for human consumption."  *Id.* § 431.0817(1)(C).  And it doesn't provide any standards at all for the undefined—and contested—concepts of "ultra-processed" and "processed" foods.  *Id.* § 431.0817(2).

As a result, regulated entities have no real way to know when federal law preempts Section 9's warning requirement.  That indeterminacy makes it impossible for plaintiffs' members to conform their conduct to the law because it "fails to define key categories" that trigger Section 9.  *Students Engaged in Advancing Tex. v. Paxton*, 765 F. Supp. 3d 575, 602 (W.D. Tex. 2025).

At minimum, this Court should adopt a narrow interpretation of these

---

[4]  Neither does the proposed rule promulgated by the Texas Department of Health and Human Services.  *See* 50 Tex. Reg. 6304 (copying statutory language nearly verbatim without defining any of these terms).

provisions to avoid Section 9's constitutional infirmities. *See Turtle Island Foods,* *S.P.C. v. Strain*, 65 F.4th 211, 221 (5th Cir. 2023). That would at least make clear that plaintiffs' members aren't subject to Section 9's warning requirements when, for example, FDA regulations specifically speak to the use of an ingredient and how that ingredient should be used.

### D.    Plaintiffs are also substantially likely to succeed on the merits of their claim that Section 9 is preempted.

State law "is preempted where . . . 'state law conflicts with federal law or interferes with the achievement of federal objectives.'" *Witty v. Delta Air Lines, Inc.*, 366 F.3d 380, 384 (5th Cir. 2004). Section 9's warning requirement does both—so it's both conflict and obstacle preempted.

### 1.    The warning requirement is conflict preempted.

The FDCA provides that "[a] food shall be deemed to be misbranded" if "its labeling is false or misleading in any particular." 21 U.S.C. § 343. But Section 9 actually *requires* plaintiffs' members to place warnings on their products that are both false and misleading. *Supra,* at 5–6, 10–11. By forcing plaintiffs' members to choose between violating federal or state law, Section 9's warning requirement creates a conflict that requires preemption. *See PLIVA, Inc. v. Mensing*, 564 U.S. 604, 618–19 (2011); *Mut. Pharm. Co. v. Bartlett*, 570 U.S. 472, 493 (2013). At minimum, Section 9 is preempted where the warning it compels is literally false because the foreign jurisdictions it invokes permit an ingredient's use. Ex. A, ¶ 9; Ex. B, ¶ 6; Ex. C, ¶ 9.

### 2.    The warning requirement is obstacle preempted.

Section 9 is also obstacle preempted.  Congress passed the NLEA to "establish uniform national standards for the nutritional claims and the required nutrient information displayed on food labels."  H.R. Rep. No. 101-538 (1990); *see also In re: Whole Foods*, 163 F. Supp. 3d at 391 (explaining that "part of the NLEA's purpose was to create uniform national standards regarding the labeling of food.").  It's "easy to see why Congress would not want to allow states to impose disclosure requirements of their own on packaged food products, most of which are sold nationwide. Manufacturers might have to print 50 different labels, driving consumers who buy food products in more than one state crazy." *Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 426 (7th Cir. 2011).

Section 9 leads to that untenable result by imposing a Texas-specific warning on all foods and beverages that contain even 1 of the 44 listed ingredients.  That warning "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" to establish uniform requirements for food and beverage labeling and is preempted.  *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941); *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000).

## II.    Plaintiffs' members will suffer irreparable harm without injunctive relief.

Section 9 subjects plaintiffs' members to irreparable (1) constitutional, (2) economic, and (3) reputational harm.

*First*, the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod*, 427 U.S. at 373.  Once the

Court determines that plaintiffs' First Amendment challenge to Section 9 is substantially likely to succeed, it necessarily follows that plaintiffs' members will suffer irreparable injury absent preliminary relief. *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 295 (5th Cir. 2012).

*Second*, Section 9 inflicts irreparable economic harm on plaintiffs' members by forcing costly changes to their products, labels, and operations. Ex. A, ¶¶ 19–21; Ex. B, ¶¶ 12–17; Ex. C, ¶ 11–12. Even though Section 9 doesn't formally take effect until January 1, 2027, given the long lead-times, plaintiffs' members are already altering their business practices to prepare for Section 9's warning requirement. Ex. B, ¶ 18; Ex. D, ¶ 26.

Plaintiffs' members are largely national corporations without Texas-specific raw materials, ingredients, inventory, warehouses, or supply chains. As a result, plaintiffs' members must either reformulate products entirely or redesign, reprint, and relabel Texas-bound products. Ex. A, ¶¶ 14, 17; Ex. B, ¶¶ 16–17; Ex. C, ¶¶ 11–12; Ex. D, ¶¶ 15–19, 24. They must rewrite and reformat all webpages that are subject to Section 9's warning. Ex. A, ¶¶ 13, 15; Ex. B, ¶¶ 11, 13; Ex. C, ¶ 11; Ex. D, ¶ 21. They must configure their inventory and warehousing systems to segregate products bound for Texas. Ex. A, ¶¶ 14, 16–17; Ex. B, ¶¶ 12–14; Ex. C ¶¶ 11–12; Ex. D, ¶ 22. And they must train their sales, regulatory, marketing, customer-services and compliance teams about Section 9. Ex. A, ¶ 18; Ex. C, ¶ 11; Ex. D, ¶ 23.

These unrecoverable costs are more than sufficient to support a preliminary injunction. *Louisiana v. Biden*, 55 F.4th 1017, 1034 (5th Cir. 2022) ("complying with

a regulation later held invalid almost *always* produces the irreparable harm of nonrecoverable compliance costs"); *Wages & White Lion Invs., LLC v. FDA*, 16 F.4th 1130, 1142–43 (5th Cir. 2021).

*Third*, the warning requirement will irreparably harm plaintiffs' members' reputations and goodwill. Section 9 compels plaintiffs' members to affix false and misleading warnings to their products. Ex. A, ¶¶ 8–12; Ex. C, ¶ 9; Ex. D, ¶¶ 10–12. As a result, plaintiffs' members will lose goodwill that they have carefully built over years. Ex. A, ¶¶ 24–26; Ex. B, ¶¶ 20–21; Ex. C, ¶ 10; Ex. D, ¶¶ 14, 27; *see Nat'l Ass'n of Mfrs. v. SEC*, 800 F.3d 518, 530 (D.C. Cir. 2015).

## III.    The remaining factors weigh in favor of a preliminary injunction.

The analysis of the remaining factors is particularly straightforward in this case—where the balance-of-equities and the public interest merge, *Book People,* 91 F.4th at 341—because following the Constitution and "protecting First Amendment freedoms are always in the public interest." *Opulent Life*, 697 F.3d at 298; *Fund Tex. Choice v. Paxton*, 658 F. Supp. 3d 377, 415 (W.D. Tex. 2023); *Book People*, 91 F.4th at 341. In addition, preliminary injunctive relief "favor[s] the status quo." *Wenner v. Tex. Lottery Comm'n*, 123 F.3d 321, 326 (5th Cir. 1997). All the preliminary injunction factors, then, point towards granting plaintiffs the relief they seek.

## CONCLUSION

The Court should grant a preliminary injunction preventing the Attorney General from enforcing Section 9 against plaintiffs and their members.

Dated: December 12, 2025                    Respectfully submitted,

                                            /s/ Allyson N. Ho
                                            Allyson N. Ho
                                                State Bar of Texas No. 24033667
                                                aho@gibsondunn.com
                                            Benjamin D. Wilson
                                                State Bar of Texas No. 24084105
                                                bdwilson@gibsondunn.com
                                            GIBSON, DUNN & CRUTCHER LLP
                                            2001 Ross Avenue, Suite 2100
                                            Dallas, Texas 75201
                                            Telephone: (214) 698-3100

                                            Prerak Shah
                                                State Bar of Texas No. 24075053
                                                pshah@gibsondunn.com
                                            GIBSON, DUNN & CRUTCHER LLP
                                            811 Main Street, Suite 3000
                                            Houston, Texas 77002
                                            Telephone: (346) 718-6600

                                            *Counsel for Plaintiffs*