**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION**

AMERICAN BEVERAGE ASSOCIATION;
CONSUMER BRANDS ASSOCIATION;
NATIONAL CONFECTIONERS ASSOCIATION;
FMI, THE FOOD INDUSTRY ASSOCIATION,
      PLAINTIFFS,

v.

KEN PAXTON, IN HIS OFFICIAL CAPACITY AS
ATTORNEY GENERAL OF THE STATE OF
TEXAS,
      DEFENDANT.

CASE NO. 6:25-CV-00566

# KEN PAXTON'S MEMORANDUM RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

TABLE OF CONTENTS

Table of Contents ................................................................................................................... ii

Index of Authorities ............................................................................................................. iii

Introduction ........................................................................................................................... 1

Statement of the Case ........................................................................................................... 1

I.   Federal food and beverage ingredient regulations do not prohibit states from regulating ingredients further than federal law allows to protect consumers. ................................................ 2

II.  Section 9's safety disclosure requirement merely requires businesses to convey additional information of interest to consumers about the safety of certain ingredients. ............................ 3

Standard ................................................................................................................................. 5

Summary of Argument .......................................................................................................... 6

Argument ............................................................................................................................... 7

I.   Plaintiffs Are Unlikely to Prevail on the Merits of Their First Amendment and Vagueness Claims. ................................................................................................................................ 7

   A.  Section 9 does not violate the First Amendment. ............................................................. 7

      1.  Strict Scrutiny does not apply to commercial speech regulations like that of S.B. 25 Section 9 .......................................................................................................................... 7

   B.  Plaintiffs are also not likely to succeed on the merits of their claim that Section 9's warning requirement is void for vagueness. .......................................................................... 10

   C.  Plaintiffs are not substantially likely to succeed on the merits of their claim that Section 9 is preempted. .................................................................................................................... 12

      1.  The Presumption is Against Preemption ................................................................... 12

      2.  Preemption Is Not Proper with Respect to Food Labeling ......................................... 12

         a. Health and Safety Issues Are Traditionally State Issues ......................................... 12

         b. Existence of a Federal Regulatory Scheme Does Not Allow Preemption .................. 13

         c. NLEA Expressly Disclaims Preemption .................................................................. 14

         d. Texas S.B. 25 Is No Obstacle to Federal Regulations ............................................ 15

II.  The remaining factors weigh against granting a preliminary injunction. .............................. 15

Conclusion ........................................................................................................................... 16

Certificate of Service ........................................................................................................... 17

INDEX OF AUTHORITIES

**Cases**

*Altria Group, Inc. v. Good,*
    555 U.S. 70 (2008) ................................................................................................. 16

*Anderson v. Jackson,*
    556 F.3d 351 (5th Cir. 2009) ................................................................................ 6

*Arnaud's Rest. v. Cotter,*
    212 F.2d 883 (5th Cir. 1954) ............................................................................... 15

*Bates v. Dow Agrosciences LLC,*
    544 U.S. 431 (2005) ............................................................................................... 16

*Bd. of Trs. of the State Univ. of N.Y. v. Fox,*
    492 U.S. 469 (1989) ............................................................................................... 12

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,*
    489 U.S. 141 (1989) ............................................................................................... 19

*Cent. Hudson Gas & Elec. Corp. v. Public Service Comm'n of New York,*
    447 U.S. 557 (1980) ...................................................................................... 9, 10, 11

*Christian Legal Soc'y v. Walker,*
    453 F.3d 853 (7th Cir. 2006) ............................................................................... 21

*Cipollone v. Liggett Group, Inc.,*
    505 U.S. 504 (1992) ............................................................................................... 16

*Clark v. Prichard,*
    812 F.2d 991 (5th Cir. 1987) ................................................................................ 7

*Edenfield v. Fane,*
    507 U.S. 761 (1993) ............................................................................................... 12

*English v. Gen. Elec. Co.,*
    496 U.S. 72 (1990) ..................................................................................... 17, 18, 20

*Hillsborough County, Fla., v. Automated Med. Labs., Inc.,*
    471 U.S. 707 (1985) ......................................................................................... 16, 18

*Hines v. Davidowitz,*
    312 U.S. 52 (1941) ................................................................................................. 20

*Holk v. Snapple Bev. Corp.*,
  575 F.3d 329 (3rd Cir. 2009) .................................................................. 12, 16, 18, 19

*Houston Balloons & Promotions, LLC v. City of Houston*,
  589 F. Supp. 2d 834 (S.D. Tex. 2008) .................................................................. 9

*In re R. M. J.*,
  455 U.S. 191 (1982) .................................................................. 10

*Jones v. Rath Packing Co.*,
  430 U.S. 519 (1977) .................................................................. 20

*Lackey v. Stinnie*,
  No. 23-621, 2025 WL 594737 (U.S. Feb. 25, 2025) .................................................................. 6

*Lartigue v. R. J. Reynolds Tobacco Co.*,
  317 F.2d 19 (5th Cir. 1963) .................................................................. 15

*Lorillard Tobacco Co. v. Reilly*,
  533 U.S. 525 (2001) .................................................................. 13

*Mayo Found. for Med. Educ. & Research v. BP Am. Prod. Co.*,
  447 F. Supp. 3d 522 (N.D. Tex. 2020) .................................................................. 6, 7

*McClellan v. Chipman*,
  164 U.S. 347 (1896) .................................................................. 3

*Nken v. Holder*,
  556 U.S. 418 (2009) .................................................................. 7

*Plumley v. Massachusetts*,
  155 U.S. 461 (1894) .................................................................. 17

*Rice v. Santa Fe Elevator Corp.*,
  331 U.S. 218 (1947) .................................................................. 17

*Rubin v. Coors Brewing Co.*,
  514 U.S. 476 (1995) .................................................................. 11

*Savage v. Jones*,
  225 U.S. 501 (1912) .................................................................. 20

*Simpson v. Young*,
  854 F.2d 1429 (D.C. Cir. 1988) .................................................................. 15

*Taniguchi v. Kan Pac. Saipan, Ltd.*,
  566 U.S. 560 (2012) .................................................................. 14

*United States v. Locke,*
   529 U.S. 89 (2000) ................................................................................................17

*United States v. Robinson,*
   367 F.3d 278 (5th Cir. 2004) ..............................................................................14

*Univ. of Texas v. Camenisch,*
   451 U.S. 390, 395 (1981) ...................................................................................... 6

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council,*
   425 U.S. 748 (1976) ..........................................................................................9, 10

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.,*
   455 U.S. 489 (1982) ............................................................................................14

*Ward v. Rock Against Racism,*
   491 U.S. 781 (1989) ............................................................................................11

*Wyeth v. Levine,*
   555 U.S. 555 (2009) .......................................................................................16, 19

*Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio,*
   471 U. S. 626 (1985) ...........................................................................................10

**Statutes**

21 U.S.C. § 343 ........................................................................................................ 2

21 U.S.C. § 343(*l*) ...................................................................................................5

21 U.S.C. § 343(q)(5)(A) .........................................................................................5

21 U.S.C. § 343-1(a) ............................................................................................2, 3

21 U.S.C. § 348 ........................................................................................................3

California Food Safety Act, Cal. Assemb. Bill No. 418, 2023-2024 Reg. Sess. (Cal. 2023) ............1

Food Safety and Chemical Disclosure Act,
   S.B. 1239A, 2025-2026 Leg. Sess. (N.Y. 2025) (as passed by Senate) ....................................... 2

Nutrition Labeling and Education Act, Pub. L. No. 101-535, 104 Stat. 2353 ........................... 18, 19

S.B. 25, 89th Leg., Reg. Sess. (Tex. 2025) ..............................................................7

Tex. Health & Safety Code § 431.0815 ..............................................................1, 2, 7

Tex. Health & Safety Code § 431.0815(a) ................................................................ 4

Tex. Health & Safety Code § 431.0815(b)(1) .............................................................3

Tex. Health & Safety Code § 431.0816 .....................................................................8

The Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 ........................................... 2

**Other Authorities**

*Approved Additives and E Numbers*, Food Standards Agency ...........................................5

**Constitutional Provisions**

U.S. Const. art. VI, cl. 2 ............................................................................................15

**INTRODUCTION**

The State of Texas files this Response in Opposition to Plaintiffs' Motion for Preliminary Injunction. In support thereof, Defendant respectfully offers the following.

**STATEMENT OF THE CASE**

Both Plaintiffs and Defendant agree that safe foods and beverages are of critical importance, and no doubt, the people of Texas agree as well. And the parties, like families across Texas, may have differing ideas regarding what foods are safe or healthy for their families to eat. To that end, Texas has passed legislation to enhance food and beverage safety, through S.B. 25's Section 9 required provision of information about additive ingredients. This disclosure requirement, instead of outright banning certain foods or ingredients, simply requires manufacturers to alert the consumers of Texas to the presence of a list of ingredients which consumers may find objectionable, so that those consumers may make their own informed choices. *See* Tex. Health & Safety Code § 431.0815.

Texas is not the only state to turn its focus to the ingredients in foods and beverages, nor is this a partisan political issue. California passed its California Food Safety Act in 2023, and by doing so, banned outright four ingredients, three of which (Potassium Bromate, Propylparaben, and Red Dye 3) are also regulated by Texas's S.B. 25. California Food Safety Act, Cal. Assemb. Bill No. 418, 2023-2024 Reg. Sess. (Cal. 2023). And New York is currently considering similar legislation which, if enacted, would ban the same three ingredients. Food Safety and Chemical Disclosure Act, S.B. 1239A, 2025-2026 Leg. Sess. (N.Y. 2025) (as passed by Senate).

Texas's S.B. 25 Section 9, while targeting more ingredients than these similar bills, is more moderate in its action, and instead of outright banning the ingredients, merely requires companies

to attach safety warning labels to foods containing them, so that consumers may make educated choices about the foods they purchase. Tex. Health & Safety Code § 431.0815.

## I. Federal food and beverage ingredient regulations do not prohibit states from regulating ingredients further than federal law allows to protect consumers.

There is no dispute that federal law regulates ingredients of foods and beverages. The Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.* does indeed authorize the federal government to regulate foods, beverages, and the packaging of those items. 21 U.S.C. § 343 lays out the circumstances under which "a food shall be deemed to be misbranded." And the next section, 21 U.S.C. § 343-1(a) goes on to explain that states are preempted from passing regulations about *food* labeling which conflict with 21 U.S.C. § 343.

However, S.B. 25's Section 9 discusses not foods, but ingredients, such as artificial color, additives, and other chemicals. Tex. Health & Safety Code § 431.0815. The appropriate federal analog which regulates food *additives*, 21 U.S.C. § 348, does not have a provision like 21 U.S.C. § 343-1(a) which expressly preempts state regulation.

It follows that, where states could theoretically regulate or outright prohibit ingredients, a state must also have the lesser power to simply require their labeling. *See McClellan v. Chipman*, 164 U.S. 347, 360 (1896) (explaining, in the context of state powers, that "the power to do the greater necessarily carries with it the right to do the lesser."). So, if Texas permissibly could ban food ingredients outright, surely Texas must also be able to require warning labels accompany the inclusion of those ingredients.

## II. Section 9's safety disclosure requirement merely requires businesses to convey additional information of interest to consumers about the safety of certain ingredients.

Tex. Health & Safety Code § 431.0815(b)(1) requires that businesses label their foods with a warning as follows:

> WARNING: This product contains an ingredient that is not recommended for human consumption by the appropriate authority in Australia, Canada, the European Union, or the United Kingdom.

Plaintiffs take issue with this warning for several reasons. None are sufficient to warrant an injunction of the statute at this time.

First, plaintiffs contend that the warning is misleading, suggesting that the warning suggests that the ingredients are "unsafe." Pls.' Mot. Prelim. Inj., ECF No. 6 at 5. Plaintiffs also suggest that the warning suggests that the ingredients are prohibited in "*all*" of the four mentioned jurisdictions. *Id.* at 6. Both such concerns read beyond the plain text of the warning, which states only that the ingredient is "not recommended"—not necessarily banned outright, nor declared "unsafe." Tex. Health & Safety Code § 431.0815(a). And the statute clearly says "Australia, Canada, the European Union, *or* the United Kingdom," not "*and*." *Id.* (emphasis added).

Plaintiffs also contend that the some of the ingredients listed in Tex. Health & Safety Code § 431.0815(a) are not banned in any of the four countries listed in the required warning label. Defendant, admittedly, cannot reasonably vouch for the legal status of all 44 ingredients in each of the four foreign jurisdictions at this stage of the litigation. However, Defendant can confirm that at least *some* of the ingredients are restricted or prohibited in at least some of the foreign jurisdictions—a fact which appears to be tacitly admitted in Plaintiffs' own exhibits. *See, e.g.,*

Exhibit A, Declaration of Amy Brink, ECF No. 6-1 at 4 (stating that "Green 3 is permitted in *some of* the European Union, United Kingdom, Canada, and Australia." (emphasis added)); Exhibit B, Declaration of Rhonda Bentz, ECF No. 6-2 at 4 (stating that "[o]ther ingredients covered by Section 9 are permitted in the United States and *some* of the foreign jurisdictions listed by Section 9." (emphasis added)). Indeed, a cursory examination of just one jurisdiction (the United Kingdom)'s permitted additives shows that several of the ingredients listed in Section 9 are not present (implying their prohibited status), though of course other ingredients listed in Section 9 are present on the permitted list. For example, the UK's "Approved Additives and E numbers" does not list several ingredients found on the Section 9 list, including Azodicarbonamide, Calcium Bromate, and Morpholine, just to name a few.[1] And, even this page notes that while an additive may be "permitted," "[m]ost additives are only permitted to be used in certain foods and are subject to specific quantitative limits," suggesting that even "permitted" additive ingredients may still be subject to further regulations due to the presence of health hazards posed by the ingredients. *Id.*

Full inquiry into the legal status of each listed ingredient in each foreign jurisdiction will certainly need to occur as the case moves forward, but for the purposes of this early stage of the litigation, Defendant does not bear the burden of proving whether the Texas Legislature was correct or mistaken in its characterization of each of several dozen listed ingredients.

---

[1] *Approved Additives and E Numbers*, Food Standards Agency, (last updated July 16, 2025), https://www.food.gov.uk/business-guidance/approved-additives-and-e-numbers (listing the UK's approved additives such as "colours, preservatives, antioxidants, sweeteners, emulsifiers, stabilisers, thickeners and other types of additives."). Notably, the UK's list builds off EU regulations, suggesting that ingredients not listed therein are therefore not permitted in at least *two* of the four jurisdictions. *See id.*

Finally, Plaintiffs note that Section 9's labeling requirements are "riddled with exemptions" for circumstances such as restaurant and retail-prepared food, dietary supplements, and agricultural chemicals. Pls.' Mot. Prelim. Inj., ECF No. 6 at 6. These exemptions, however, highlight the efforts of the Texas legislature to harmonize with federal regulations, which provide similar exemptions from labeling requirements. *See, e.g.*, 21 U.S.C. § 343(q)(5)(A) (exempting food "served in restaurants" and food "processed and prepared primarily in a retail establishment"); 21 U.S.C. § 343(*l*) (exempting pesticide chemicals in certain circumstances); 21 U.S.C. § 343(q)(5)(F) (providing different standards for dietary supplements).

### STANDARD

Preliminary injunctions are issued "to preserve the status quo until a trial can occur." *Lackey v. Stinnie*, No. 23-621, 2025 WL 594737, at *1 (U.S. Feb. 25, 2025) (citing *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)). Though the District Court has discretionary power to issue a preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure, injunctive relief "is an extraordinary and drastic remedy, and should only be granted when the movant has clearly carried the burden of persuasion." *Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009) (internal quotation omitted). Absent extenuating circumstances, no District Court should issue a preliminary injunction unless one is necessary to protect the plaintiff from irreparable injury or to preserve the court's power to render a meaningful decision after a trial on the merits. *Mayo Found. for Med. Educ. & Research v. BP Am. Prod. Co.*, 447 F. Supp. 3d 522, 527–28 (N.D. Tex. 2020).

Even within this limited locus of action, the District Court should grant preliminary injunctions only when the plaintiff establishes the following: (1) it is substantially likely to succeed on the merits of the underlying case; (2) it is substantially likely to suffer irreparable harm if the

injunction is not granted; (3) the threatened injury outweighs any harm that the injunction may occasion for the defendant; and (4) the injunction will not undermine the public interest. *Id.* at 528. Though the balance of equities and public interest factors merge when a government is the opposing party, *Nken v. Holder*, 556 U.S. 418, 435 (2009), these four factors are nonetheless conjunctive—Plaintiff must carry its burden as to all four factors before a preliminary injunction may be considered, *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987).

### SUMMARY OF ARGUMENT

This Court should not grant Plaintiffs' request for preliminary injunction because Plaintiffs can carry none of the four factors required for such relief. Most critically, Tex. Health & Safety Code § 431.0815, the core contested section of S.B. 25, has no effect until January 1, 2027. S.B. 25, 89th Leg., Reg. Sess. (Tex. 2025) (S.B. 25, Section 15(b), explains that "Section 431.0815 . . . applies only to a food product label developed or copyrighted on or after January 1, 2027."). First, harm that is a little more than a year into the future can hardly be considered imminent. Second, an injunction would have no appreciable effect for the entire calendar year of 2026. Defendant Paxton is indeed tasked with enforcing Section 9 as Attorney General. Tex. Health & Safety Code § 431.0816. But whether an injunction is granted or not, Attorney General Paxton would have no ability to conduct any enforcement until January 1, 2027, as it is a logical impossibility for any possible violation to exist until then.

*First*, Plaintiffs are unlikely to succeed on the merits: S.B. 25's Section 9 is entirely permissible as a state regulation of commercial speech, and passes intermediate scrutiny. *Second*, Plaintiffs can show no irreparable harm that would be prevented by a preliminary injunction, as

explained above. *Third*, Plaintiffs cannot satisfy the merged balance of equites and public interest factors.

As such, the court should instead allow the case to proceed without issuing an injunction, so that the relevant facts may be more fully discovered before a conclusion is reached, as there is no conceivable harm to Plaintiffs for at least one year, and no enforcement would actually be prevented for the same period of time—thus, the status quo is upheld for a year even without an injunction.

**ARGUMENT**

## I.  Plaintiffs Are Unlikely to Prevail on the Merits of Their First Amendment and Vagueness Claims.

### A.  Section 9 does not violate the First Amendment.

Commercial speech is that "expression which is related solely to the economic interests of the speaker and its audience." *Houston Balloons & Promotions, LLC v. City of Houston*, 589 F. Supp. 2d 834, 847 (S.D. Tex. 2008) (citing *Cent. Hudson Gas & Elec. Corp. v. Public Service Comm'n of New York,* 447 U.S. 557, 561 (1980). Commercial speech has value, and is indeed entitled to first amendment protection, but it receives a "different degree of protection," and is understood to be less susceptible to chilling effects of legislation due to the profitability associated with it. *See Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council*, 425 U.S. 748, 771 n.24 (1976).

### 1.  Strict Scrutiny does not apply to commercial speech regulations like that of S.B. 25 Section 9.

S.B. 25's Section 9 could plausibly pass higher levels of scrutiny, given the importance to Texas of the health and safety of the foods and beverages consumed by Texans. However, the Supreme Court has held that, because the extension of First Amendment protection to commercial

7

speech is justified principally by the value to consumers of the information such speech provides, the plaintiffs' constitutionally protected interest in not providing any particular factual information in advertising is "minimal." *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U. S. 626, 651 (1985) (citing *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council*, 425 U.S. 748 (1976). In all commercial cases, the Supreme Court has emphasized that because disclosure requirements have less of an effect on a party's interests than do flat prohibitions on speech, warnings or disclaimers may be appropriately required in order to avoid or diminish consumer confusion. *E.g., In re R. M. J.*, 455 U.S. 191, 201 (1982).

## 2. Section 9's Warning Requirement Withstands Intermediate Scrutiny.

Commercial speech by its very nature involves commercial transactions and thus is provided lesser protection by the Constitution than is non-commercial speech. *Cent. Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 562–63 (1980). Whether regulations on commercial speech are content-based or content-neutral, intermediate scrutiny is applied. *Pagan v. Fruchey*, 492 F.3d 766, 770, 778 (6th Cir. 2007). In short, intermediate scrutiny requires that a restriction on speech be narrowly tailored to further a substantial government interest. *See Ward v. Rock Against Racism*, 491 U.S. 781, 798–99 (1989). In order to apply this level of scrutiny to regulations on commercial speech, the United States Supreme Court developed a four-part test:

> (1) The commercial speech must concern lawful activities and must not be misleading;
> (2) The government must establish a substantial interest in support of the regulation;
> (3) The regulation must directly and materially advance the substantial government interest; and
> (4) The regulation must be narrowly tailored to achieve the government's desired result.

*See Cent. Hudson*, 447 U.S. at 566.

First, while Petitioners allege that some of the required labels under S.B. 25 would be inaccurate, the required label, that "[t]his product contains an ingredient that is not recommended for human consumption by the appropriate authority in Australia, Canada, the European Union, or the United Kingdom," should therefore be presumed accurate—not misleading—unless and until Plaintiffs can sufficiently prove to the contrary that the ingredients on the list are not recommended against by any of the four listed authorities.

Second, states have a serious and substantial interest in food and beverage labeling for safety reasons. *See generally Rubin v. Coors Brewing Co.*, 514 U.S. 476, 485 (1995). Health and safety issues have traditionally fallen within the province of state regulation; this includes the regulation of food and beverage labeling and branding. *Holk*, 575 F.3d at 334. Likewise, the government has a substantial interest in ensuring the accuracy of any commercial information in the marketplace. *Edenfield v. Fane*, 507 U.S. 761, 769 (1993). There is no question that the state has a substantial interest in protecting its citizens health and safety.

The third and fourth prongs of the Supreme Court's test require that the regulation be "narrowly tailored" to the substantial interests advanced, and that it actually "directly" and "materially" advances those interests. *Pagan v. Fruchey*, 492 F.3d 766, 771 (6th Cir. 2007).

Third, by naming specific ingredients which have been found to be either dangerous enough to ban or to at least to provide health warnings for in other scientifically advanced countries, the warnings directed to consumers is directly tied to the state's interest and materially advances its goal of providing information on the possible dangers of food ingredients. These prongs do not require that a restriction be the "least restrictive means" by which the government may advance

9

its stated objectives, but only that it must be "reasonable" and "not more extensive than necessary." *Bd. of Trs. of the State Univ. of N.Y. v. Fox*, 492 U.S. 469, 479–80 (1989) ("not necessarily perfect, but reasonable."); *Pagan*, 492 F.3d at 771.

The governmental authorities referenced in S.B. 25 have found health concerns that justify restrictions, up to outright banning, on ingredients included within the Act. Whether the U.S. government has— so far—not made the same determination does not remove the potential danger, nor does it remove the need to warn the public. Informing consumers of the potential issues found by technically sophisticated countries is a reasonable method of increasing the health and safety of Texas citizens. Again, the tailoring inquiry in this analysis does not require a "least restrictive means" be used. *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 556 (2001). Instead, there must only be a "reasonable fit between the legislature's ends and the means chosen to accomplish those ends." *Id.* That has been accomplished by S.B. 25. The Texas Legislature selected a list of specific ingredients and has limited the scope of S.B. 25 to those ingredients. To the extent that the respective health authorities of the four countries listed raise genuine health concerns, this legislation clearly advances a legitimate and strong state interest in the health and safety of its citizens.

### B. Plaintiffs are also not likely to succeed on the merits of their claim that Section 9's warning requirement is void for vagueness.

Facial vagueness challenges succeed only against provisions that are "impermissibly vague in all of [their] applications." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 495 (1982). Thus, facial vagueness challenges are among "the most difficult . . . to mount successfully," *United States v. Robinson*, 367 F.3d 278, 290 (5th Cir. 2004). Plaintiffs have not

carried their burden to prove that Section 9's challenged provisions are impermissibly vague in all their applications.

Void for vagueness challenges are usually evaluated under the "person of ordinary intelligence" standard, as noted by Plaintiffs. ECF No. 6 at 15–16. However, "economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action." *Vill. of Hoffman Ests.*, 455 U.S. at 498. Added to this loosened standard, Plaintiffs challenges the commonplace terms "safe for human consumption," whether federal law or FDA regulation makes a "determination" or "imposes conditions on the use of the ingredient," and "ultra-processed or processed foods," terms plaintiffs describe as "undefined—and contested." ECF No. 6 at 16. When a term is "undefined in a statute, we give the term its ordinary meaning." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566 (2012). While it is understandable that food manufactures would take the position that the ordinary meanings of "processed foods" and "ultra-processed foods" are incomprehensible, these are widely understood terms used in scientific and public discussion.[2] Likewise, FDA actions against contaminants in food are widely understood, certainly by the Plaintiffs. Finally, "safe for human consumption" is a term that has been used by federal courts in food cases for at least 70 years. *See Simpson v. Young*, 854 F.2d 1429, 1431 (D.C. Cir. 1988); *Lartigue v. R. J. Reynolds Tobacco Co.*, 317 F.2d 19, 34 (5th Cir. 1963); and *Arnaud's Rest. v. Cotter*, 212 F.2d 883, 886 (5th Cir. 1954).

---

[2] Amy Quinton, *What to Know About Processed and Ultra-Processed Foods: Experts Weigh In on the Debate Behind How Processed Foods Could Affect Health*, Unfold, a Podcast by UC Davis (Apr. 22, 2025), https://www.ucdavis.edu/food/news/what-to-know-about-processed-and-ultra-processed-food.

C. **Plaintiffs are not substantially likely to succeed on the merits of their claim that Section 9 is preempted.**

1. **The Presumption is Against Preemption**

The preemption doctrine is rooted in Article VI of the United States Constitution, which states that the laws of the United States "shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Under the Supremacy Clause, federal law may be held to preempt state law where any of the three forms of preemption doctrine may be properly applied: express preemption, field preemption, and implied conflict preemption. *E.g.*, *Hillsborough County, Fla., v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713 (1985). The courts are guided in their preemption analysis "by the rule that '[t]he purpose of Congress is the ultimate touchstone in every preemption case.'" *Altria Group, Inc. v. Good*, 555 U.S. 70, 76 (2008).

However, all analysis must begin with a presumption against federal preemption. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992); *Holk v. Snapple Bev. Corp.*, 575 F.3d 329, 334 (3rd Cir. 2009). "In areas of traditional state regulation, [courts] assume that a federal statute has not supplanted state law unless Congress has made such an intention clear and manifest." *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005) (internal quotation marks omitted). This requires that, if confronted with two plausible interpretations of a statute, we "have a duty to accept the reading that disfavors pre-emption." *Id.*; *see also Wyeth v. Levine*, 555 U.S. 555, 575 (2009).

2. **Preemption Is Not Proper with Respect to Food Labeling**

   a. **Health and Safety Issues Are Traditionally State Issues**

Field preemption occurs when state law occupies a "field reserved for federal regulation," leaving no room for state regulation. *United States v. Locke*, 529 U.S. 89, 111 (2000). It may also be

inferred when "an Act of Congress 'touch[es] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.'" *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). However, for field preemption to be applicable, "congressional intent to supersede state laws must be 'clear and manifest.'" *Id.* That intent is not present with regard to Food and beverage labeling. In fact, the opposite is true.

Health and safety issues have traditionally fallen within the province of state regulation. This is especially true of the regulation of food and beverage labeling and branding. *E.g.*, *Plumley v. Massachusetts*, 155 U.S. 461, 472 (1894) ("If there be any subject over which it would seem the states ought to have plenary control . . . it is the protection of the people against fraud and deception in the sale of food products."). Food labeling has therefore been an area historically governed by state law. *Holk*, 575 F.3d at 334–35.

### b. Existence of a Federal Regulatory Scheme Does Not Allow Preemption

The Supreme Court has repeatedly stated that "the mere existence of a federal regulatory scheme," even a particularly detailed one, "does not by itself imply pre-emption of state remedies." *English v. General Electric Co.*, 496 U.S. 72, 87 (1990); *see also Hillsborough County, Fla., v. Automated Med. Labs., Inc.*, 471 U.S. 707, 717 (1985). To conclude otherwise would be "virtually tantamount to saying that whenever a federal agency decides to step into a field, its regulations will be exclusive." *Id.* at 717. Congress has not made any express claims of preemption against state labeling of ingredients in food and beverages.

13

### c. NLEA Expressly Disclaims Preemption

In 1990, Congress passed the Nutrition Labeling and Education Act (NLEA). Nutrition Labeling and Education Act, Pub. L. No. 101-535, 104 Stat. 2353, *codified at* 21 U.S.C. § 343 *et seq.* NLEA introduces a number of substantial reforms: (1) it requires nutrition labeling for nearly all food products under the authority of the Food and Drug Administration, with exemptions for small businesses, restaurants, and some other retail establishments; (2) it changes the requirements for ingredient labels on food packages; (3) it imposes and regulates health claims on packages; (4) it standardizes all nutrient content claims; and (5) it standardizes serving sizes. *See Holk*, 575 F.3d at 332. NLEA itself declares that courts may not find implied preemption based on any provision of NLEA. It states that the Act "shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under [21 U.S.C. § 343-1] of the Federal Food, Drug, and Cosmetic Act." Pub. L. No. 101-535, § 6(c)(1). Furthermore, NLEA declares that its express preemption provision "shall not be construed to apply to any requirement respecting a statement in the labeling of food that provides for a warning concerning the safety of the food or component of the food," thereby preserving state warning laws. Pub. L. No. 101-535, § 6(c)(2).[3]

Further, the case for federal pre-emption is "particularly weak" where Congress has indicated its awareness of the operation of state law in a field of federal interest but nonetheless decided to stand by both concepts and to tolerate whatever tension there is between them. *Levine*, 555 U.S. at 575 (quoting *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 166-67,

---

[3] It must be noted that, even prior to the enactment of the NLEA to govern food labeling, there was no express preemption provision in the FDCA. *See Levine*, 555 U.S. at 575 (recognizing the absence of an express preemption provision in the FDCA).

(1989)). As shown by the terms of the NLEA, we are faced with that exact situation—an area of the law where the federal government has expressly accepted state regulation with regard to the states' traditional and long-standing powers related to food safety. In the present case, S.B. 25 is therefore not preempted by federal law or regulations.

### d.  Texas S.B. 25 Is No Obstacle to Federal Regulations

Implied conflict preemption is present when it is "impossible for a private party to comply with both state and federal requirements." *English*, 496 U.S. at 78–79. Such is not true in the present case. Alternatively, conflict preemption results when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941). With regard to this point, a state law may be preempted only if the purpose of the invoked federal law cannot otherwise be accomplished—if its operation "must be frustrated and its provisions be refused their natural effect." *Id.* at 67 n.20 (quoting *Savage v. Jones*, 225 U.S. 501, 533 (1912)); *see also Jones v. Rath Packing Co.*, 430 U.S. 519, 526 (1977) (stating that the court's task is "to determine whether, under the circumstances of this particular case, [the State's] law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."). As shown above, Congress, within the NLEA, has expressly recognized the authority of the states to require labels where appropriate. There is no conflict and no fatal obstacle to the objectives of the federal government.

## II.  The remaining factors weigh against granting a preliminary injunction.

The citizens of Texas have an interest in being informed about the presence and safety of ingredients in the foods and beverages they consume. The public interest in knowing whether ingredients in their food are potentially harmful outweighs any public interest achieved by granting

an injunction. Plaintiffs argue that the public will be harmed because of confusion consumers will experience because of Texas having slightly different labeling than other states. ECF No 6 at 2; ECF 6-3 at 3 and ECF 6-4 at 5. But this is just a restatement of their claim that the warning labels are misleading, otherwise they would have to concede that consumers having more information is good. And most consumers in Texas buy the majority of their food products in Texas, so Plaintiffs have not established how Texans would be confused by having different labeling in other states.

Plaintiffs argue that because they allege a First Amendment injury, it would be in the public interest to grant a preliminary injunction. ECF No. 6 at 20. There is no presumption however that asserting a First Amendment claim affects the public interest factor. And the "district court must exercise its discretion to determine whether the balance of harms weighs in favor of the moving party or whether the nonmoving party or public interest will be harmed sufficiently that the injunction should be denied." *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006).

The balance of equities also weighs against Plaintiffs. Granting an injunction would enjoin a law passed by a democratically elected Legislature. The competing harm is that Plaintiffs would have to slightly change their labeling over one year from now. Denying an injunction at this preliminary stage would preserve federalism and the separation of powers without meaningfully harming Plaintiffs.

## CONCLUSION

This Court should deny Plaintiff's motion for preliminary injunction.

Date: December 29, 2025

**KEN PAXTON**
Attorney General

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**RYAN D. WALTERS**
Deputy Attorney General for Legal Strategy

**RYAN G. KERCHER**
Chief, Special Litigation Division
Texas Bar No. 24060998

Respectfully submitted.

*/s/ Zachary W. Berg*
**ZACHARY W. BERG**
Special Counsel
Texas Bar No. 24107706

**STEVEN B. LOOMIS**
Special Counsel
Texas Bar No. 00793177

OFFICE OF THE ATTORNEY GENERAL OF TEXAS
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Ryan.Kercher@oag.texas.gov
Zachary.Berg@oag.texas.gov
Steven.Loomis@oag.texas.gov
**COUNSEL FOR THE STATE OF TEXAS**

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on December 29, 2025 and that all counsel of record were served by CM/ECF.

/s/ Zachary W. Berg
Zachary W. Berg

17