# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| AMERICAN BEVERAGE ASSOCIATION; CONSUMER BRANDS ASSOCIATION; NATIONAL CONFECTIONERS ASSOCIATION; FMI, THE FOOD INDUSTRY ASSOCIATION,<br><br>  Plaintiffs,<br><br>  v.<br><br>KEN PAXTON, in his official capacity as ATTORNEY GENERAL OF THE STATE OF TEXAS,<br><br>  Defendant. | Civil Case No. 25-cv-00566-ADA-DTG |

**PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR A PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................. i
TABLE OF AUTHORITIES ........................................................................................... ii
INTRODUCTION .......................................................................................................... 1
ARGUMENT .................................................................................................................. 3
    I.    Plaintiffs are substantially likely to succeed on the merits. ................. 3
        A.    Section 9's warning requirement violates the First Amendment. ................................................................................................. 3
        B.    Section 9's warning requirement is void for vagueness. .............. 7
        C.    Section 9's warning requirement is preempted. ........................... 8
    II.    Plaintiffs' members will suffer irreparable harm absent relief. ............. 9
    III.    The equities weigh decisively in favor of a preliminary injunction. ... 10
CONCLUSION ............................................................................................................. 10
CERTIFICATE OF SERVICE ..................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Book People, Inc. v. Wong,*
　91 F.4th 318 (5th Cir. 2024) ............................................................................... 2, 10

*Central Hudson Gas & Elec. Co. v. Pub. Serv. Comm'n of N.Y.,*
　447 U.S. 557 (1980) ................................................................................................ 6

*Christian Legal Soc'y v. Walker,*
　453 F.3d 853 (7th Cir. 2006) ............................................................................ 2, 10

*Comput. & Commc'ns Indus. Ass'n v. Paxton,*
　2025 WL 3754045 (W.D. Tex. Dec. 23, 2025) ...................................................... 8

*Free Speech Coal., Inc. v. Paxton,*
　95 F.4th 263 (5th Cir. 2024) ...................................................................... 3, 4, 6, 7

*Geier v. Am. Honda Motor Co., Inc.,*
　529 U.S. 861 (2000) ................................................................................................ 9

*Hines v. Pardue,*
　117 F.4th 769 (5th Cir. 2024) ............................................................................. 5, 6

*Int'l Ass'n of Color Mfrs. v. Singh,*
　2025 WL 3721864 (S.D. W. Va. Dec. 23, 2025) .................................................. 10

*Johnson v. United States,*
　576 U.S. 591 (2015) ................................................................................................ 8

*Los Altos Boots v. Bonta,*
　562 F. Supp. 3d 1036 (E.D. Cal. 2021) ................................................................ 10

*Nat'l Ass'n of Wheat Growers v. Bonta,*
　85 F.4th 1263 (9th Cir. 2023) ................................................................................. 7

*Nat'l Inst. of Fam. & Life Advocs. v. Becerra,*
　585 U.S. 755 (2018) ............................................................................................ 3, 4

*Opulent Life Church v. City of Holly Springs,*
　697 F.3d 279 (5th Cir. 2012) .............................................................................. 2, 9

*Rest. L. Ctr. v. U.S. Dep't of Lab.,*
　66 F.4th 593 (5th Cir. 2023) .............................................................................. 2, 10

*Riley v. Nat'l Fed'n of the Blind of N.C., Inc.,*
　487 U.S. 781 (1988) ................................................................................................ 3

*Ryan LLC v. FTC,*
　739 F. Supp. 3d 496 (N.D. Tex. 2024) ................................................................. 10

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.,*
　455 U.S. 489 (1982) ................................................................................................ 8

*Zauderer v. Off. of Disciplinary Couns. of Sup. Ct. of Ohio,*
　471 U.S. 626 (1985) ................................................................................................ 3

## INTRODUCTION

The government's response does the best it can with the constitutionally flawed law it has to work with. Ultimately, though, the response confirms what plaintiffs and their *amici* have established—a preliminary injunction should issue because plaintiffs are (1) substantially likely to succeed on at least one of their constitutional challenges to Section 9's warning requirement, particularly their First Amendment challenge; (2) entitled to protection from the irreparable harms of lost constitutional freedoms and unrecoverable compliance expenditures; and (3) seeking a preliminary injunction that would serve the public interest by vindicating constitutional rights. The Court need determine that the preliminary-injunction standard is satisfied as to just one claim—and the response makes clear that plaintiffs' First Amendment claim is especially likely to succeed.

*First*, other than a throwaway line (at 7), the response doesn't even attempt to show that the government could carry its heavy burden of satisfying strict scrutiny. If that standard applies—and it does, Mot. 10; Chamber & WLF *Amicus* Br. 6 n.4—plaintiffs are substantially likely to prevail on their First Amendment claim for that reason alone. The same result obtains under intermediate scrutiny, which the response correctly concedes (at 6, 8–10) applies at minimum. Critically, the response concedes (at 3) that the government can't assure the Court that the required warning is factually accurate—and that's fatal, because the government can't have a sufficient interest in requiring warnings it hasn't verified and can't substantiate, let alone that are false or misleading. Even assuming an interest, less speech-compelling

1

alternatives exist to further it—*e.g.*, the government could speak for itself instead of compelling others to speak its scripted messages. Mot. 11–12. The response doesn't dispute either the existence or the effectiveness of those alternatives.

*Second*, nothing in the response undercuts plaintiffs' irreparable-harm showing. *See* Mot. 18–20. The most the response can do is point out (at 6) that Section 9's warning requirement won't go into effect for another year. But the response doesn't acknowledge—much less attempt to controvert—the evidence that plaintiffs' members must take costly and burdensome steps now if they want to sell their products in Texas a year from now. *See* Mot. 18–19 (citing affidavits). Those injuries are irreparable. *See Rest. L. Ctr. v. U.S. Dep't of Lab.*, 66 F.4th 593, 597 (5th Cir. 2023). So is the loss of First Amendment freedoms, which the response doesn't dispute, perhaps because it's so well settled that such loss is irreparable harm. *See Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 295 (5th Cir. 2012).

*Third*, the response's own authority confirms that "injunctions protecting First Amendment freedoms are always in the public interest." *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006). The response argues (at 15–16) that an injunction would impede the flow of information to the public, but the Fifth Circuit holds that the public isn't "injured by an injunction of a statute that likely violates" the Constitution. *Book People, Inc. v. Wong*, 91 F.4th 318, 341 (5th Cir. 2024). And common sense dictates that the public has no interest in information that's false or misleading. Plaintiffs' motion for a preliminary injunction should be granted.

**ARGUMENT**

I. **Plaintiffs are substantially likely to succeed on the merits.**

    A. **Section 9's warning requirement violates the First Amendment.**

The response concedes, as it must, that the warning requirement is subject to intermediate scrutiny, at minimum. Resp. 6, 8–10; *see also Free Speech Coal., Inc. v. Paxton*, 95 F.4th 263, 283 (5th Cir. 2024) ("*NIFLA* suggests that compelled speech must survive, *at minimum*, intermediate scrutiny.") (citing *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755, 773 (2018) (*NIFLA*)).[1] The response only disputes (1) whether strict scrutiny applies (it does), and (2) if intermediate scrutiny applies, whether Section 9 survives (it doesn't).

        1. **Strict scrutiny applies—and the response makes no attempt to show that Section 9 could survive it.**

As plaintiffs established in their motion (at 10) and *amici* agree (Chamber & WLF *Amicus* Br. 6 n.4), strict scrutiny applies to Section 9's warning requirement because, by mandating what companies must say on their product labels, it "necessarily alters the content of the speech." *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 795 (1988). Such content-based laws are "presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *NIFLA*, 585 U.S. at 766.

---

[1] The government's concession is well advised. Under *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626 (1985), a less-stringent level of scrutiny applies only when the government compels the disclosure of "purely factual and uncontroversial information." *Free Speech Coal.*, 95 F.4th at 281. That isn't the case here because Section 9's compelled speech is neither. *See id.* at 282; Mot. 14–15; Chamber & WLF *Amicus* Br. 8; Goldwater *Amicus* Br. 5.

3

That's a heavy burden, and the response makes no effort to show that Section 9 could survive it. That's because it couldn't. The government has no interest, much less a compelling one, in forcing companies to convey false or misleading information, and Section 9 isn't narrowly tailored because the government could simply speak for itself without compelling others' speech. Mot. 10–12.

The response disputes (at 7–8) only that strict scrutiny applies to "commercial speech," insisting that intermediate scrutiny under *Central Hudson* applies instead. But that argument runs counter to the Fifth Circuit's observation that "*Central Hudson* dealt only with *restrictions* on commercial speech, not *compelled* speech," and there's "certainly some difference between compelled speech and compelled silence." *Free Speech Coal.*, 95 F.4th at 283 & n.64. The response offers no reason to depart from the Fifth Circuit's logic and treat content-based compelled-speech requirements differently just because they arise in the commercial context. *See NIFLA*, 585 U.S. at 766–69. Strict scrutiny applies, and the response effectively concedes that Section 9 can't survive it by making no argument to the contrary. Plaintiffs' First Amendment claim is substantially likely to succeed for that reason alone.

### 2. Section 9 can't satisfy intermediate scrutiny, either.

As plaintiffs demonstrated in their motion (at 12–14), their First Amendment challenge to Section 9's warning requirement is substantially likely to succeed even if intermediate scrutiny applies, because (a) the government lacks a substantial interest in compelling Section 9's warnings, (b) those warnings don't advance any asserted interest except in an impermissibly roundabout way, and (c) the government

4

could speak for itself rather than compelling others to speak. Contrary to the response (at 4), "[t]he burden of justification" under intermediate scrutiny "is demanding and it rests *entirely* on the State." *Hines v. Pardue*, 117 F.4th 769, 779 (5th Cir. 2024).

    *a. No substantial interest.* The response concedes (at 3) that the government "cannot reasonably vouch for the legal status of all 44 ingredients in each of the four foreign jurisdictions." *See also* Resp. 4 (noting that some Section 9-listed ingredients are "present on the permitted list" in the U.K.). The response also admits (at 4) that the government has yet to carry out "[f]ull inquiry into the legal status of each listed ingredient in each foreign jurisdiction"—despite requiring plaintiffs' members to label their products with that unverified message. And the response makes no effort to dispute that none of the four countries affirmatively labels ingredients "not recommended for human consumption" as Section 9's warning suggests. Those concessions are fatal to Section 9, even under intermediate scrutiny, because the government has no substantial interest in requiring warnings it hasn't verified and can't substantiate, let alone that are false or misleading. *See* Mot. 12; Goldwater *Amicus* Br. 10; Chamber & WLF *Amicus* Br. 9–11.

    The response's argument (at 9) that the government has an interest "in ensuring the accuracy of any commercial information in the marketplace" goes nowhere, given that the response concedes that the government can't confirm whether the speech Section 9 compels is accurate. The government is at best unsure whether the speech Section 9 compels is true, and the response doesn't meaningfully

5

dispute that every ingredient covered by Section 9 *and* used by plaintiffs' members is permitted by the FDA and federal law. Nor can the response salvage Section 9 by falling back (at 9) on a general government interest in protecting health and safety, because that interest is pitched at far too high a level of generality to satisfy intermediate scrutiny. *Hines*, 117 F.4th at 779–80.[2]

  b. *Doesn't directly advance the asserted interest.* Even if the government could carry its burden of demonstrating a substantial interest, Section 9's warning requirement still couldn't satisfy intermediate scrutiny because it doesn't directly advance the government's stated interests in health and safety. Mot. 12–14; Chamber & WLF *Amicus* Br. 11.

  The response speculates (at 10) that Section 9's compelled-speech requirement could "increas[e] the health and safety of Texas citizens," but "Texas must meet a higher standard than 'might.'" *Free Speech Coal.*, 95 F.4th at 283–84; Chamber & WLF *Amicus* Br. 11. The question isn't whether the speech restriction is "reasonable," as the government contends (at 10), but instead whether it "will in fact alleviate [the harms] to a material degree." *Free Speech Coal.*, 95 F.4th at 283–84. That's not the case here, where the government can't confirm whether the ingredients listed in Section 9 carry any health and safety risks in the first place—or even that the warning Section 9 requires is accurate. "[C]ompelling sellers to warn consumers

---

[2] The response misunderstands *Central Hudson* when it argues (at 9) that the warning required by Section 9 should be "presumed accurate—not misleading." Speech that is false or misleading gets no protection under *Central Hudson*. *Central Hudson Gas & Elec. Co. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 563–64 (1980).

of a potential 'risk' never confirmed by any regulatory body"—or by the government—"does not directly advance" the government's interest. *Id.* at 284 (quoting *Nat'l Ass'n of Wheat Growers v. Bonta*, 85 F.4th 1263, 1283 (9th Cir. 2023)).

The response never explains *how* Section 9's warning might further its asserted interests. That's because it can't. After all, Section 9's warning wouldn't tell consumers which ingredient triggered the warning or which foreign jurisdiction purportedly recommends against its consumption. Mot. 10–11.

c. *Less speech-burdening alternatives.* Before compelling others to convey a government-scripted message, the government must consider less speech-burdening alternatives. Mot. 13; *Free Speech Coal.*, 95 F.4th at 284–85. The response doesn't dispute that the government itself could have conveyed whatever information it wanted about the food-safety policies of foreign jurisdictions (or what it thinks about the safety of the ingredients at issue) without compelling others to convey its government-scripted messages. *See* Mot. 13; Chamber & WLF *Amicus* Br. 12. But the response contains no argument that the government "tried a government-funded public information campaign or that such a campaign would be ineffective." *Free Speech Coal.*, 95 F.4th at 284. That alone makes the "warnings unconstitutionally compelled commercial speech." *Id.* And it further confirms that plaintiffs' First Amendment claim is substantially likely to succeed.

**B.    Section 9's warning requirement is void for vagueness.**

Plaintiffs' challenge to the warning requirement as void for vagueness is also substantially likely to succeed. Mot. 15–17. Due process forbids laws that don't give

7

regulated parties fair notice of what's required, especially where the law implicates the First Amendment. Mot. 15–16. That principle dooms Section 9, which provides no guidance on when its warning requirement applies and when it doesn't. Mot. 16. The response counters (at 11) that the vagueness doctrine applies with less force to commercial regulations. But the sole case cited explains that "a more stringent vagueness test should apply" where, as here, "the law interferes with the right of free speech." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 499 (1982). "Without definitions and standards, the spectrum of interpretations is vast" and "'interferes with the right of free speech' in a way that is constitutionally unacceptable and must be enjoined." *Comput. & Commc'ns Indus. Ass'n v. Paxton*, 2025 WL 3754045, at *8 (W.D. Tex. Dec. 23, 2025).[3]

## C. Section 9's warning requirement is preempted.

Section 9's warning requirement is preempted twice over. Mot. 17–18. It's conflict-preempted because it forces plaintiffs' members to choose between complying with state law or violating federal law, and it's obstacle-preempted because it defies Congress's goal of uniform national food-labeling standards. *Id.* at 18. On conflict preemption, the response baldly asserts (at 15) without elaboration or support that "[s]uch is not true in the present case." On obstacle preemption, the response attacks a strawman by focusing (at 12–14, 15) on field and express preemption, neither of

---

[3] Contrary to the response (at 11), the use of "safe for human consumption" in judicial decisions doesn't immunize that undefined term from a vagueness challenge. *See Johnson v. United States*, 576 U.S. 591, 605 (2015). And the response makes no effort to explain what it means for federal law to "impose[] conditions" on an ingredient's use.

which plaintiffs invoke. The Supreme Court has made clear that state law can be conflict preempted even when Congress hasn't occupied a field or has disclaimed express preemption. *Geier v. Am. Honda Motor Co., Inc.*, 529 U.S. 861, 869 (2000).

## II.   Plaintiffs' members will suffer irreparable harm absent relief.

Without a preliminary injunction, Section 9's warning requirement will inflict irreparable constitutional, economic, and reputational harm on plaintiffs' members. Mot. 18–20. The response's primary rejoinder (at 6) is that the warning requirement doesn't become effective until January 1, 2027. But that ignores that once the Court determines that plaintiffs' First Amendment challenge is substantially likely to succeed, it necessarily follows that plaintiffs' members will suffer irreparable injury absent preliminary relief. Mot. 18–19 (citing *Opulent Life Church*, 697 F.3d at 295). It also ignores plaintiffs' evidence that their members must take costly and burdensome steps *now* if they want to sell their products in Texas a year from now, including:

- Reformulating, redesigning, and relabeling Texas-bound products, Ex. A, ¶¶ 14, 17; Ex. B, ¶¶ 16–17; Ex. C, ¶¶ 11–12; Ex. D, ¶¶ 15–19, 24;

- Revamping their websites, Ex. A, ¶¶ 13, 15; Ex. B, ¶¶ 11, 13; Ex. C, ¶ 11; Ex. D, ¶ 21;

- Reconfiguring their inventories and warehouses, Ex. A, ¶¶ 14, 16–17; Ex. B, ¶¶ 12–14; Ex. C ¶¶ 11–12; Ex. D, ¶ 22; and

- Training their sales, marketing, and regulatory teams on Section 9's warning requirement, Ex. A, ¶ 18; Ex. C, ¶ 11; Ex. D, ¶ 23.

The response doesn't attempt to controvert any of this evidence, which demonstrates that plaintiffs' members have already begun altering their business practices and

9

that Section 9 is already inflicting unrecoverable constitutional, economic, and reputational injuries as a result. Those injuries are irreparable. *See Book People*, 91 F.4th at 340–41; *Rest. L. Ctr.*, 66 F.4th at 597. Because plaintiffs' members "will need to take steps" to ensure compliance before Section 9's effective date and "will be affected by the eventual enforcement" of Section 9's warning requirement, they've established irreparable injury. *Int'l Ass'n of Color Mfrs. v. Singh*, 2025 WL 3721864, at *13 (S.D. W. Va. Dec. 23, 2025).[4]

### III. The equities weigh decisively in favor of a preliminary injunction.

Following the Constitution and vindicating First Amendment freedoms always serve the public interest. Mot. 20. The authority cited in the response only confirms that conclusion. *Christian Legal Soc'y*, 453 F.3d at 859. The response's contention (at 15) that a preliminary injunction would hinder the public from receiving information ignores that the public "won't be injured by an injunction of a statute that likely violates" the Constitution. *Book People*, 91 F.4th at 341. Common sense dictates that the public has no interest in receiving false or misleading information.

### CONCLUSION

The Court should grant a preliminary injunction preventing the Attorney General from enforcing Section 9 against plaintiffs and their members.

---

[4] Future effective dates don't immunize laws from being preliminarily enjoined. *E.g.*, *Singh*, 2025 WL 3721864, at *13 (enjoining law banning color additives that didn't go into effect for two years); *Ryan LLC v. FTC*, 739 F. Supp. 3d 496, 516–18 (N.D. Tex. 2024); *Los Altos Boots v. Bonta*, 562 F. Supp. 3d 1036, 1047 (E.D. Cal. 2021).

<div style="display:flex">
<div>Dated: January 5, 2026</div>
<div>

Respectfully submitted,

 */s/ Allyson N. Ho*
Allyson N. Ho
   State Bar of Texas No. 24033667
   aho@gibsondunn.com
Benjamin D. Wilson
   State Bar of Texas No. 24084105
   bdwilson@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201
Telephone: (214) 698-3100

Prerak Shah
   State Bar of Texas No. 24075053
   pshah@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
811 Main Street, Suite 3000
Houston, Texas 77002
Telephone: (346) 718-6600

*Counsel for Plaintiffs*
</div>
</div>

## CERTIFICATE OF SERVICE

I hereby certify that on January 5, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

<div align="right">

*/s/ Allyson N. Ho*
Allyson N. Ho

</div>