UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| AMERICAN BEVERAGE ASSOCIATION; CONSUMER BRANDS ASSOCIATION; NATIONAL CONFECTIONER'S ASSOCIATION; FMI, THE FOOD INDUSTRY ASSOCIATION,<br><br>    Plaintiffs,<br><br>v.<br><br>KEN PAXTON, in his official capacity as ATTORNEY GENERAL OF THE STATE OF TEXAS,<br><br>    Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§  CIVIL NO. 6:25-CV-00566-ADA-DTG<br>§<br>§<br>§<br>§<br>§<br>§ |

## ORDER ON PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Before the Court is Plaintiffs' Motion for a Preliminary Injunction ("Motion"). Dkt. No. 6. The Court has reviewed the Motion (Dkt. No. 6), Defendant's Response (Dkt. No. 14), Plaintiffs' Reply (Dkt. No. 16), as well as Amicus Briefs filed in support of the Motion (Dkt. Nos. 12, 13). The Court heard arguments on February 3, 2026. Having reviewed the briefing, heard arguments, and considered the relevant facts and law, the Court finds the Motion should be GRANTED.

### I.   BACKGROUND

This case concerns Section 9 of Texas Senate Bill 25 ("Section 9"), a law that requires food and beverage manufacturers to include conspicuous warning labels on products that contain any of 44 listed ingredients, subject to some exceptions. *See* Tex. Health & Safety Code § 431.0815(a). If a product falls under Section 9's warning requirement, the manufacturer is required to include a conspicuous warning label on the product as well as post it online. *See* Tex. Health & Safety Code § 431.0815(b)(1). The required warning states: "WARNING: This product contains an ingredient that is not recommended for human consumption by the appropriate authority in Australia, Canada,

1

the European Union, or the United Kingdom." *Id.* The law also contains a list of requirements on how the warning must be placed to be conspicuous. *See id.* § 431.0815(b)(2)-(3).

Section 9 also contains a Federal Preemption provision which states that Section 431.0185 (the labeling requirement) will have no effect if the United States Food and Drug Administration or the United States Department of Agriculture issues a law or regulation pertaining to one of the 44 listed ingredients which prohibits its use, imposes conditions on its use, determines it to be safe, or requires a particular labeling statement. *See id.* § 431.0817. Section 9 will formally take effect starting January 1, 2027. S.B. 25, 89th Leg., Reg. Sess. (Tex. 2025) (S.B. 25, Section 15(b), explains that "Section 431.0815 . . . applies only to a food product label developed or copyrighted on or after January 1, 2027.").

Plaintiffs are a collection of nonprofit entities that manufacture and market, or represent manufacturers and marketers, of consumer-packaged foods and beverages. *See* Dkt. No. 1 ¶¶ 15-18. Defendant Ken Paxton is the sole defendant in this suit, and is the Attorney General of Texas, sued in his official capacity.

## II.   LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy" which should only be granted where a plaintiff carries his "heavy burden" that injunctive relief is warranted. *Planned Parenthood of Greater Tex. Fam. Plan. & Preventative Health Servs., Inc. v. Kauffman*, 981 F.3d 347, 353 (5th Cir. 2020) (en banc) (quotations omitted); *Leachman v. Harris Cty.*, 779 F.App'x 234, 237 (5th Cir. 2019) (quotations omitted). To obtain a preliminary injunction, a plaintiff must establish the following four elements:

> (1) there is a substantial likelihood that it will prevail on the merits,
> (2) there is a substantial threat that the party will suffer irreparable injury if the preliminary injunction is denied,
> (3) the threatened injury to the party seeking the injunction outweighs the threatened injury to the party to be enjoined, and

>  (4) granting the preliminary injunction will not disserve the public interest.

*Walgreen Co. v. Hood*, 275 F.3d 475, 477 (5th Cir. 2001). The party seeking injunctive relief carries the burden of persuasion on all four requirements. *PCI Transp. Inc. v. W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005).

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020) (citation omitted). When a preliminary injunction is sought against the government, the third and fourth factors—balance of equities and public interest—merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). "[I]njunctions protecting First Amendment freedoms are always in the public interest." *Texans for Free Enter. v. Texas Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013).

### III. DISCUSSION

#### A. Likelihood of Success on the Merits

##### 1. First Amendment Claims

The Court finds that Plaintiffs have shown that they are substantially likely to succeed on the merits of their claim that Section 9 violates the First Amendment by unconstitutionally compelling speech. It is well established that the First Amendment protects commercial speakers, as well as the "right to speak and the right to refrain from speaking." *See Free Speech Coal., Inc. v. Paxton*, 95 F.4th 263, 279 (5th Cir. 2024), *cert. granted*, 144 S. Ct. 2714, 219 L. Ed. 2d 1318 (2024) *and aff'd*, 606 U.S. 461 (2025) ("*Free Speech Coal.*") (citations omitted). Yet, it is equally settled that the government may regulate commercial speech more heavily than non-commercial speech. *Id.* (citing *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 562 (1980)). So, the constitutionality of the required warnings turns on both (1) whether the speech is commercial and (2) the applicable level of scrutiny. *Id.*

3

Plaintiffs claim the warnings are content-based regulations of speech—so strict scrutiny applies under *National Institute of Family and Life Advocates v. Becerra*. Dkt. No. 6 at 9 (citing *Nat'l Inst. of Fam. & Life Advocates v. Becerra*, 585 U.S. 755, 766 (2018)). Defendant argues that Section 9 applies to commercial speech and is only subject to intermediate scrutiny, which it withstands. Dkt. No. 14 at 8.

As a threshold matter, the Court finds that strict scrutiny likely applies to Section 9 because it is a content-based regulation. *See Becerra*, 585 U.S. 755, 766 (2018) (content-based regulations of speech are subject to strict scrutiny). The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits laws that abridge the freedom of speech. *Id.* Content-based regulations, which are subject to strict scrutiny, "target speech based on its communicative content." *See id.* (quoting *Reed v. Town of Gilbert,* 576 U.S. 155, 163 (2015)). Such laws are "presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests. *See id*. (citation omitted).

A regulation that compels individuals to speak a particular message alters the content of their speech and is considered a content-based regulation. *See id.* (evaluating a licensed notice which required licensed clinics to provide a government-drafted script about the availability of state-sponsored services, as well as contact information for how to obtain them). Section 9 compels food and beverage makers to convey a government-scripted message on food labels and online. They must convey word-for-word the warning laid out in Section 9, making it a government-scripted message. And Section 9 requires it be clearly and conspicuously placed on the relevant items—showing the government is forcing the food and beverage makers to convey it.

Plaintiffs argue that the state has no interest—let alone a compelling one—in compelling food and beverage manufacturers to convey the required warning, as they maintain it is false or

misleading. *See* Dkt. No. 6 at 10. Plaintiffs argue the warning is false or misleading because none of the four jurisdictions listed in the required warning categorize the listed ingredients as "not recommended for human consumption." *Id.* The Court finds that it does not need to reach the issue of whether the message should be considered false or misleading, because the state did not make any clear case for why the law passes strict scrutiny. When strict scrutiny is applied, the government bears the burden of showing that the law is justified by a compelling government interest and is narrowly drawn to serve that interest. *See Brown v. Entm't Merchants Ass'n*, 564 U.S. 786, 799 (2011). Defendant's argument primarily focused on the intermediate scrutiny point—which is discussed below. Defendant did not carry his burden under strict scrutiny, so if it does apply to Section 9 as a content-based regulation, it fails.

Defendant argues that strict scrutiny does not apply because Section 9 is a commercial speech regulation and therefore subject to intermediate scrutiny. Dkt. No. 14 at 7. Defendant cited to *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, but did not make an affirmative argument that the deferential test under *Zauderer* should apply. *See id.* at 8 (citing *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U. S. 626, 651 (1985)). However, two amicus briefs filed in support of Plaintiffs' Motion addressed why the Court should find *Zauderer* does not apply here. *See* Dkt. Nos. 12, 13. Under *Zauderer*, the government may require businesses to provide disclosures when they are (1) purely factual, (2) noncontroversial, and (3) not unjustified or unduly burdensome. *See R J Reynolds Tobacco Co. v. FDA*, 96 F.4th 863, 876-77 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 592 (2024). The Court finds that *Zauderer*'s deferential test does not apply here because Section 9's required warning is not noncontroversial and Section 9 is not in the narrow category of speech assessed under *Zauderer*'s special test.

Defendant argues that the Court should apply intermediate scrutiny under *Central Hudson*,

wherein the government must show:

> (1) The commercial speech must concern lawful activities and must not be misleading;
> (2) The government must establish a substantial interest in support of the regulation;
> (3) The regulation must directly and materially advance the substantial government interest; and
> (4) The regulation must be narrowly tailored to achieve the government's desired result.

Dkt. No. 14 at 8 (citing *Cent. Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 566 (1980)). Given that the Fifth Circuit has recognized "it is unsettled precisely what standard of scrutiny applies to compelled commercial speech," the Could will consider whether Section 9 withstands intermediate scrutiny. *See Free Speech Coal.*, 95 F.4th at 283.

Even if the *Central Hudson* standard for intermediate scrutiny did apply to Section 9, the Court finds that it would not pass muster. Addressing the "substantial interest" factor, Plaintiffs argue that the government has no interest "in compelling disclosures about foreign jurisdictions that it concedes it has [not] verified and can[not] vouch for." Dkt. No. 27, Feb. 3 Hr. Tr. 4:13-16.

Defendant argues that there is a substantial interest in the health and well-being of its citizens, and that this law will affect how much the State spends on medical costs given that the overall health of the State is affected by the food its people eat. *See id.* 16:6-18. Further, Defendant pointed out that the law was passed unanimously in the Texas Senate—arguing that helps support the "substantial interest" prong. *See id.* 9:15-20, 15:10-15. Defendant pointed to concerns raised by the legislature about food companies selling the same products, such as Froot Loops or ketchup, but with different ingredients in the United States than in Canada or the UK. *Id.* 18:14-22. Defendant argued that providing more information to consumers will lead to consumers making

more informed choices purchasing good, and the industry would respond by selling the products already being sold abroad—thus overall promoting the healthy qualify of food sold in Texas. *Id.* 19:1-6.

The Court finds that there is a substantial interest being supported by the law. The State has shown there is a substantial interest in supporting the health and well-being of its citizens by promoting better ingredients in foods sold in Texas.

Moving to the third and fourth factors—whether the law "directly and materially advances" the substantial interest and is "narrowly tailored" to the substantial interest advanced—Plaintiffs argue that any interest served by Section 9 is not directly advanced but rather served "in an impermissibly roundabout way." *Id.* 5:6-7. Plaintiffs cited to and quoted directly from the Fifth Circuit in *Free Speech Coalition*: "Compelling sellers to warn consumers of a potential risk never confirmed by any regulatory body or of a hazard not known to more than a small subset of the scientific community does not directly advance the government's interest." *Id.* 5:8-14 (quoting *Free Speech Coal.*, 95 F.4th at 284-85). Further, Plaintiffs argue that the law is not "narrowly tailored" because the government could simply speak for itself without imposing a prophylactic rule of compelled speech. Dkt. No. 6 at 11 (citing *Nat'l Fed'n of the Blind of Tex., Inc. v. Abbott*, 647 F.3d 202, 213–14 (5th Cir. 2011)). Plaintiffs argue that Texas has not made any showing that it tried a "public information campaign or that such campaign would be ineffective"—demonstrating that there are "obvious less-burdensome alternatives" available to Section 9's required warning. *Id.* (quoting *Free Speech Coal.*, 95 F.4th at 284).

Defendant argues that by naming specific ingredients which have been found to be dangerous by other countries, the warning is "directly tied to the state's interest and materially advances its goal of providing information on the possible dangers of food products." Dkt. No. 14

7

at 9. Defendant argues that the chosen means do not have to be the "least restrictive means" but must only be "reasonable" and "not more extensive than necessary." *Id.* at 9-10. Defendant argues that Section 9 accomplishes what is required, that there be a "reasonable fit between the legislature's ends and the means chosen to accomplish those ends." *Id.* at 10 (quoting *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 556 (2001)).

The Court does not agree that the State's means directly and materially advance the substantial interest and finds that Section 9 is not narrowly tailored to the stated substantial interest. The Court agrees with Plaintiffs that the State could have spoken itself by conducting an advertising campaign but has not done so. Nor has the State shown that such campaign would be ineffective for advancing the substantial interest of promoting public health. The State has the burden of showing the law satisfies all four factors of intermediate scrutiny under *Central Hudson*, but it has failed to do so. While the Court agrees that there is a substantial interest that prompted Texas to pass the law, the Court finds that the means chosen to advance that interest do not pass constitutional muster.

Therefore, the Plaintiffs have shown a substantial likelihood of success on the merits of their First Amendment claim.

### 2. Void for Vagueness Challenges

Plaintiffs also challenged Section 9 as being unconstitutionally vague because of the "preemption" provision. Dkt. No. 6 at 15-16. The "preemption" provision provides that Section 9 will have "no effect" if a federal law or FDA regulation "imposes conditions on the use of the ingredient," "determines an ingredient . . . is safe for human consumption," or "requires a labeling statement relating to ultra-processed or processed foods." Tex. Health & Safety Code § 431.0817. Plaintiffs argue that Section 9 fails to define crucial phrases and, as a result, regulated entities

cannot know when federal law preempts Section 9's warning requirement. *Id.*

"A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). "A law is unconstitutionally vague if it (1) fails to provide those targeted by the statute a reasonable opportunity to know what conduct is prohibited, or (2) is so indefinite that it allows arbitrary and discriminatory enforcement." *McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1013 (5th Cir.), *cert. denied* 144 S. Ct. 348 (2023). "A regulation is void for vagueness when it is so unclear that people 'of common intelligence must necessarily guess at its meaning and differ as to its application.' " *Id.* (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926)).

Defendant argues that the terms in the statute, when given their ordinary meanings, are widely understood, and certainly understood by Plaintiffs. Dkt. No. 14 at 11. Defendant points to scientific and public discussion where the terms at issue are widely used. *Id.* Defendant also points to FDA actions against food contaminants, and the term "safe for human consumption" having been used for at least 70 years. *Id.* Defendant also argued that the law's list of 44 ingredients was created to satisfy food industry lobbyists' concerns that there was potential vagueness—though Plaintiffs' vagueness challenge is not about the list itself. *See* Dkt. No. 27, Feb. 3 Hr. Tr. 14:17-15:1.

The Court finds that at this stage, Plaintiffs have not shown they are substantially likely to succeed on the merits of their vagueness challenge. This issue will likely be better addressed at a later summary judgment stage when the record is better developed, but at this stage Plaintiffs have not shown that the law is so unclear that those in the food industry could not understand when the preemption clause would be triggered. While the law's lack of clear definitions makes it subject

9

to potentially broad interpretation, Plaintiffs have not shown at this stage it is so vague as to be unconstitutional.

### 3. Preemption Arguments

Plaintiffs argue that Section 9 is conflict preempted because it forces food and beverage manufacturers to choose between complying with state law, as embodied in Section 9, and federal law which provides that food is "misbranded" if its labeling is "false or misleading." *See* Dkt. No. 6 at 17; *see also* Dkt. No. 27, Feb. 3 Hr. Tr. 21:22-22:2. Plaintiffs maintain that the Food, Drug, and Cosmetic Act ("FDCA") provides that "[a] food shall be deemed to be misbranded" if "its labeling is false or misleading in any particular." 21 U.S.C. § 343. Plaintiffs' conflict preemption argument rests on the argument that Section 9's warning requirement is both false and misleading. The Court will not address at this stage whether the required warning is false or misleading. At this stage, the Court is not persuaded that the language itself is "false" or "misleading," and finds that the warning was meant to capture four jurisdictions' perceptions of listed ingredients.

Plaintiffs also argue that Section 9 is obstacle preempted by the Nutrition Labeling and Education Act ("NLEA"). *See* Dkt. No. 6 at 18 (discussing the Nutrition Labeling and Education Act, Pub. L. No. 101-535, 104 Stat. 2353, codified at 21 U.S.C. § 343 et seq.). Plaintiffs argue that Congress passed the NLEA to "establish uniform national standards for the nutritional claims and the required nutrient information displayed on food labels." *Id.* (citing H.R. Rep. No. 101-538 (1990)). Plaintiffs argue that Congress did not want states to impose disclosure requirements on products sold nationwide, because manufacturers might have to print 50 different labels. *Id.* Therefore, Plaintiffs maintain that Section 9 "stands as an obstacle" to Congress's objective to establish uniform requirements for food and beverage labeling, and is therefore preempted. *Id.*

The Supremacy Clause establishes that federal law "shall be the supreme Law of the Land

... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., Art. VI, cl. 2. Where state and federal law "directly conflict," state law must give way. *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 617 (2011) (citations omitted). State and federal law conflict where it is "impossible for a private party to comply with both state and federal requirements." *Id.* at 618 (citing *Freightliner Corp. v. Myrick,* 514 U.S. 280, 287 (1995)). Conflict preemption arises in two situations: (1) when it is impossible to comply with both state and federal law; or (2) when the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *United States v. Tex.*, 97 F.4th 268, 288 (5th Cir. 2024) (quoting *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372–73 (2000)).

However, all preemption cases start with the assumption that the historic police powers of the States were not to be superseded by federal law unless that was the clear and manifest purpose of Congress. *See Wyeth v. Levine*, 555 U.S. 555, 565 (2009). "In areas of traditional state regulation, [courts] assume that a federal statute has not supplanted state law unless Congress has made such an intention clear and manifest." *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005) (internal quotation marks omitted). This requires that, if confronted with two plausible interpretations of a statute, we "have a duty to accept the reading that disfavors pre-emption." *Id.*; *see also Wyeth v. Levine*, 555 U.S. 555, 575 (2009).

Defendant argues that food labelling is an area historically governed by state law, because health and safety issues have traditionally fallen within the province of state regulation. *See* Dkt. No. 14 at 13 (citing *Plumley v. Massachusetts*, 155 U.S. 461, 472 (1894)). Further, Defendant argues that the NLEA itself declares courts may not find implied preemption based on any provision of the NLEA, and that the NLEA states it "shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under [21 U.S.C. § 343-1] of

11

the Federal Food, Drug, and Cosmetic Act." *Id.* at 14 (citing Pub. L. No. 101-535, § 6(c)(1)). Defendant also points out that the FDCA itself does not contain an express preemption provision. *Id.* Defendant therefore argues that this is an area of law where the federal government has expressly accepted state regulation with regard to the states' traditional and long-standing powers related to food safety, and Section 9 is not preempted by federal law or regulations. *Id.* at 15.

Defendant also argues that the FDCA's preemption provision contained in 21 U.S.C. § 343-1(a) preempts states from passing regulations about *food* labeling which conflict with 21 U.S.C. § 343—but that does not apply to Section 9 which discusses ingredients, additives, and other chemicals. Dkt. No. 14 at 2. Defendant therefore contrasts the FDCA's preemption provision regarding *food* labeling from its provision regarding *additives* which does not have a preemption provision. *Id.*

Plaintiffs have not shown they are substantially likely to succeed on their claim that Section 9 is preempted. As previously discussed, the Court at this stage does not find it can or should determine whether Section 9's required warning is "misleading" or "false." And the Court finds that neither the FDCA nor the NLEA result in a finding that Section 9 is preempted by conflict preemption or field preemption, particularly in light of the presumption against preemption which this Court must apply. Therefore, Plaintiffs have not shown a substantial likelihood of success at this stage on their preemption claims.

**B. Irreparable Harm**

Moving to the second element of the preliminary injunction analysis, the Court finds Plaintiffs have shown they would suffer irreparable injury if the injunction is denied. "[T]he loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury." *Mahmoud v. Taylor*, 606 U.S. 522, 569 (2025) (quoting *Elrod v. Burns*, 427

U.S. 347, 373 (1976) (plurality opinion)). Because the Court has found Plaintiffs demonstrated a substantial likelihood of success on the merits of their First Amendment claim, the Court finds they have likewise satisfied the irreparable harm factor.

### C. Balance of Equities and Public Interest

"[I]njunctions protecting First Amendment freedoms are always in the public interest." *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 298 (5th Cir. 2012) (quoting *Christian Legal Soc'y v. Walker,* 453 F.3d 853, 859 (7th Cir.2006)). While Texas's interest in supporting the healthiness of food sold in its state, it does not have an interest in enforcing a law that likely violates the First Amendment. *See Book People, Inc. v. Wong*, 91 F.4th 318, 341 (5th Cir. 2024) (explaining that the State and the public will not be injured by an injunction of a statute that likely violates the First Amendment). Therefore, the Court finds the third and fourth factors are satisfied here, and that a preliminary injunction should be granted.

### IV.   CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Preliminary Injunction (Dkt. No. 6) is **GRANTED.**

**IT IS THEREFORE ORDERED** that Defendant Ken Paxton, in his official capacity as the Attorney General, is hereby **ENJOINED** from enforcing Section 9 against Plaintiffs or their members.

**SIGNED** on February 11, 2026.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE